## I. G. RANDLE V. THE STATE.

### *No. 915. Decided December 19.*

1. **Change of Venue—"Prejudice"—"Fair and Impartial Trial"—Construction of Statutes.**—The first statutory ground for change of venue, on application of the accused, as provided by article 578, Code of Criminal Procedure, is, that there exists in the county where the prosecution is commenced, so great a prejudice against him that he can not obtain a fair and impartial trial. *Held:*

1. The single and only purpose of this statute is to secure to the accused the right to "a fair and impartial trial"—which is the "fair trial by an impartial jury" guarantied by the Bill of Rights. Const., art. 1, sec. 10.

2. This article, 578, is wholly independent of and has no connection with or reference to article 579, which provides for a change of venue after "an unsuccessful effort" has been once made to obtain a jury.

3. The "prejudice" mentioned above is such prejudice against the accused himself, or a prejudgment of his particular case or crime; it may be both combined. And if there is such a prejudice existing against the accused that he can not obtain "a fair trial by an impartial jury" in the county, it is immaterial from what source this prejudice comes, or what cause or causes produced it, he is entitled to a change of venue.

2. **Same.**—"Prejudice" against the case of the defendant, and prejudgment of the same, may constitute "prejudice," such as is meant by the statute.

3. **Same.**—Where such prejudice is shown, the accused can not be deprived of his right to a change of venue, because the "bias or prejudice" of the jurors summoned to try him is required to be tested by provisions of subdivisions 12 and 13 of article 636, Code of Criminal Procedure.

4. **Jury Law—Testing Qualification of Jurors—Questions as to Formed Opinion, and Bias and Prejudice.**—On a trial for murder, in testing the qualification of jurors on their voir dire examination, it is error for the court to deny the accused the right to ask the particular juror if he had not formed an opinion that the accused was guilty, and if he did not *then* (while being examined) believe the accused was guilty, and ought to be hanged?

5. **Same.**—On a trial for murder, where a juror, who had fully qualified himself on his voir dire examination in chief, was asked, on cross-examination by defendant, if he had not formed the opinion that defendant was guilty, and if he did not then believe defendant was guilty and ought to be hanged? Which questions the court refused to allow to be put and answered, and the defendant was compelled to exhaust a peremptory challenge upon said juror; and said juror having made affidavit, before the completion of the jury, that had he been permitted to do so he would have answered the questions in the affirmative, and stated further in said affidavit, that "defendant would have to produce good strong testimony before I would change my opinion, and would have to prove himself innocent before I would acquit him;" *Held,* that the juror showed himself not only disqualified but corrupt, and that the court upon presentation of said affidavit, before the completion of the jury, should have set aside defendant's peremptory challenge as to said juror.

APPEAL from the Criminal District Court of Dallas. Tried below before Hon. CHARLES F. CLINT.

This appeal is from a conviction for murder of the second degree, the punishment being assessed at a term of twenty years in the penitentiary.

Appellant was indicted in the District Court of Dallas County, at the January Term, 1893, for the murder of E. S. Randall. The in-

dictment was found by the grand jury, and was returned and presented in and to the District Court of the Forty-fourth Judicial District in and for the county of Dallas. As originally presented, the indictment did not show that it was presented "in the District Court of the Forty-fourth Judicial District."

By act approved May 4, 1893, the Legislature created the "Dallas Criminal District Court," said act to take immediate effect, under an emergency clause, from and after its passage. Gen. Laws 23d Leg., p. 118, et seq. By section 8 of this act it was provided, that the criminal cases pending in the District Courts of Dallas County, together with all records and papers relating thereto, should be immediately transferred to said Criminal District Court. Under provisions of said act, this case was transferred to said Criminal District Court. In this latter court the county attorney filed a motion to amend the indictment, so that it might show upon its face that it had been returned by the grand jury into "the District Court of the Forty-fourth Judicial District of Texas." Defendant filed a demurrer and exceptions to this motion, which were overruled, and the indictment was permitted, over objection of defendant, to be so amended; and defendant also filed three motions to quash the indictment after it was so amended, which motions were overruled.

Defendant filed a motion to quash the special venire in the case, because it was not drawn in open court and in the presence of the judge. But as this matter is not discussed nor passed upon in the opinion, it is unnecessary to further state the matters pertaining thereto.

Defendant's motion for change of venue was based upon both the statutory grounds named in article 578, Code of Criminal Procedure. In support of both grounds there were ten compurgators. In support of the first ground alone, viz., as to prejudice against the defendant, there were thirty-one compurgators.

The county attorney filed a counter-affidavit, contesting the affidavit of said compurgators and their means of knowledge as to the matters deposed to by them, and denying the existence of facts which would sustain either ground of said motion for change of venue. Defendant filed a demurrer and special exceptions to this controverting affidavit, upon the ground that the same was too general, indefinite, and insufficient, which was overruled, the court holding, that such contesting affidavit is sufficient if it states matter which "requires the defendant to introduce proof of the truth of his affidavit." Upon the issue the court limited the number of witnesses to be examined on each side to fifteen, with the understanding that others might be introduced, if necessary, as to matters not cumulative.

Defendant's bill of exception shows the evidence of the witnesses pro and con adduced on the application, and after some thirteen had been examined for the defendant and nine by the State, the court stated that he had heard enough testimony. As stated in said bill of exceptions, the language of the court in overruling the motion is as follows:

"The court does not care to have further evidence on this motion. The defendant, in support of it, has introduced a number of witnesses who have testified to a certain condition of the public mind towards this issue; and the State has also introduced evidence to show what the state of mind of the people towards this case was. On this issue the testimony of the State and the defendant is substantially the same. If there is any difference, it is that the State's evidence was perhaps more explicit. The evidence does not support the truth of the allegations of the motion. It does not show, or tend to show, the truth of the ground of the motion as to prejudice or combination of influential persons, etc., such as under article 578, Code of Criminal Procedure, would warrant the court in granting a change of venue. The evidence as a whole shows, that in this county a great many people have formed and expressed an opinion as to defendant's guilt or innocence; that as a rule, when the case has been talked about, it was as to the merits of the case, as to whether it was murder or not, and the opinion, as far as it was expressed, was, that the defendant was guilty of murder, etc. In other words, many people have prejudged the case from what they have heard or read of it. There is no evidence, or at best but little evidence, of feeling against I. G. Randle or against the case. Under my view of the law, the evidence as a whole shows there is no such prejudice as is contemplated by article 578, Code of Criminal Procedure; but on the other hand, it does show that many people have the opinion that defendant is, under the facts, guilty of murder. Now, I take it, that under the facts in support of this motion a change of venue could only be had under article 579 of the Code of Criminal Procedure; and in order to warrant a change of venue under that article, the proper practice would be, before granting a change of venue, to first endeavor to procure a jury from the body of the people who know nothing of the case. The defendant is under our laws guarantied the right to challenge for cause any man who has prejudged his case, and until an effort has been made to procure a jury from the body of the people who have not so prejudged the case, I do not believe this court would be warranted in granting a change of venue in this case. The motion to change the venue is overruled."

The bill of exceptions further shows, that "thereupon the defendant stated that he had present in the court room and offered to call other witnesses in support of his motion, and by whom he would and could prove the grounds set forth in his said motion for a change of venue and in support thereof; and stated to the court, that the witnesses then present would testify in support of his said motion that the people of Dallas County were prejudiced against the case of the defendant, and had prejudged the same, thereby preventing a fair and impartial trial of his cause in said county." But the court refused, over the objection of defendant, to hear further testimony on the matter of the change of venue, and overruled the motion for a change of venue, and stated that the court construed the statute to mean, and would hold, that the prej-

udice must be against the defendant personally, and not against his cause; and the court further stated, "that if prejudice against the case of the defendant and prejudgment of the same constituted prejudice such as is meant by the statute, then the defendant would be entitled to a change of venue." But the court was of opinion that the prejudice, the existence of which entitled a defendant to a change of venue, must be against him as an individual, and not against his case; that the mere prejudgment of his guilt or innocence of the charge pending against him was not such prejudice as would entitle defendant to a change of venue.

The matters complained of pertaining to the impaneling of the jury, and to the overruling of his supplemental motion for change of venue, after the jury was completed, are thus shown by defendant's bills of exception, as follows, to wit:

Bill of Exceptions No. 7: "Be it remembered, that on the trial of the above numbered and entitled cause, and during the organization and impaneling of the jury therein, and while each of the jurors, after the first seven jurors who tried the case had been accepted, was being examined upon his voir dire touching his qualifications to act as a juror in this cause, the defendant then and there by his counsel sought to elicit from each of said jurors the fact that he had frequently expressed the opinion that the defendant was guilty of murder, and ought to be hanged therefor; and the further fact, that it was the belief of the juror at the time he was being examined that the defendant was guilty of murder, and should be hanged. Whereupon the court stated to defendant's counsel that they would not be permitted to propound either of said questions, nor to elicit an answer thereto from any of the jurors; whereupon counsel for the defendant stated to the court that they could prove, and then offered to prove, by each of the jurors being examined, that he had frequently expressed the opinion that the defendant was guilty of murder, and ought to be hanged, and that it was the belief of each of the jurors at the time he was thus being examined that the defendant was guilty of murder, and ought to be hanged. Whereupon the court stated to counsel for the defendant, while denying the defendant the right to make this proof by each of the jurors, that said questions would be considered as having been asked of each and every juror examined, and that counsel's statement, that they believed and expected to prove the above by each of said jurors, be incorporated in their bill. To which ruling and action of the court the defendant then and there excepted, for the reason that under such ruling, in the face of the fact that he could establish by each of the jurors that he had frequently expressed the opinion that the defendant was guilty of murder, and should be hanged, and that it was then the belief of each juror that the defendant was guilty of murder and ought to be hanged, and to compel him to accept such jurors as his triers, or to exhaust upon them his peremptory challenges,

would thereby compel the defendant to accept as his triers a jury of jurors who had prejudged his cause, and who then and there believed him guilty of murder, and that he ought to be hanged for said crime; and for the further reason, that such a juror could not, in the nature of things, be fair and impartial, as the law required him to be before he could be justly and legally impaneled to try the case; and for the further reason, that as defendant only had twenty peremptory challenges, he would, under the rulings of the court, be compelled to submit to such jurors as his triers, or exhaust upon them his peremptory challenges, when in fact he was entitled to challenge said jurors for cause, and that with this alternative thus placed before him by the rulings of the court, the defendant would be prevented from obtaining a fair and impartial jury. But the court overruled the objections thus made, and denied the defendant the right to inquire of and to prove by each of the jurors that he had expressed the opinion and entertained the belief above stated, to which action and ruling of the court the defendant then and there excepted.

"And be it further remembered, that the defendant by his counsel desired to ask each of the jurors, as they were being thus examined, whether they were not prejudiced against the defendant. But the court objected to said question, and held that counsel for defendant must propound the question in the language of subdivision 12 of article 636 of the Code of Criminal Procedure, to wit, 'Whether or not he had any bias or prejudice in favor of or against defendant.' Whereupon counsel for defendant stated to the court that the defendant desired to separate the question, and to ask each juror if he was not prejudiced against the defendant; but the court denied the defendant the right to thus put the question and to elicit an answer thereto from each juror as he was being examined. And the court stated to defendant's counsel that they would not be permitted to put said question to any other juror, but that the question thus framed, to wit, 'If the juror was not prejudiced against the defendant,' would be considered as having been asked, and the statement that defendant said he could show by their answers that they were prejudiced be incorporated in support of this bill.

"To which ruling of the court the defendant then and there excepted, for the reason that the defendant had a right to prove, and could prove, by the answers to said question, that each of the jurors was prejudiced against the defendant, and by reason of which the defendant was entitled to challenge the jurors for cause. But the court also overruled said objection, and compelled the defendant to proceed with impaneling the jury, in the face of the affirmative proof offered by them; but that notwithstanding this fact the court would not, for the above reasons, hold the jurors incompetent, and the defendant would be compelled to exhaust upon them his peremptory challenges, or submit to them as triers of his cause. The defendant then and there excepted, and reserved this bill of exceptions in each and every in-

stance where a juror was being thus examined; and tenders this bill of exceptions to the action and rulings of the court in the premises stated, and prays that the same be approved and filed as a part of the record in this cause.

"And be it further remembered, that during the organization and impaneling of said jury the defendant exhausted all of his peremptory challenges, and three jurors, to wit, Juror J. R. Leake, Juror C. P. Metcalfe, and Juror Ed McCarroll, were forced upon him after his said peremptory challenges were exhausted, and by each of which three jurors the defendant expected and offered to prove, had he been permitted to do so, affirmatively, the questions herein before stated in this bill of exceptions, and sought to be proved by all of the jurors in said cause; but this the court denied. To which ruling of the court defendant then and there excepted, and tenders this his bill of exceptions to said ruling.

"And be it further remembered, that in the impaneling and organization of said jury the defendant exhausted his twenty peremptory challenges upon the following named jurors, to wit, J. B. Stancell, T. F. Graham, M. A. Ward, Wesley Owens, R. B. Cole, Sr., I. J. Willingham, C. R. Jones, S. T. Capps, W. S. Jobson, J. K. Range, J. G. Mathis, J. L. Nix, L. F. Rogers, F. H. Goodnight, L. F. Skiles, J. M. Jones, George B. Willis, R. A. Hammond, Dan Henry, and H. P. Moore; and by each of said jurors, except the first named sixteen persons, whom he was thus compelled to challenge peremptorily, he expected to and offered to prove that each of them had frequently expressed the opinion that the defendant was guilty of murder, and ought to be hanged; and that at the time they were being thus examined on their voir dire, they each believed that the defendant was guilty of murder, and should be hanged for his crime; but this proof, as is herein before stated, was denied by the court. Yet notwithstanding these reasons, the court held said jurors competent, and defendant was compelled to exhaust his peremptory challenges upon them at a time when only seven jurors had been selected in the case.

"And be it further remembered, that in the case of the person L. F. Skiles, who was tendered as a juror, and who was challenged peremptorily, as above stated, by defendant, the said Skiles upon his voir dire examination was held to be competent by the court, at which time defendant offered to prove by said Skiles that he had frequently expressed the opinion that the defendant was guilty of murder, and should be hanged; and the court refused the counsel of defendant the right to make such proof, but stated to defendant's counsel that they could inquire of said Skiles, after he had left the stand, what his opinion was as to that he believed the defendant guilty; when the defendant's counsel protested, and stated that they could ascertain the opinion of the juror at this time, and thereby enable them to challenge him for cause, and that they should not be forced by the court to exhaust a peremptory challenge upon said juror.

"All of which the court refused to permit counsel to do, and counsel was thereby compelled to peremptorily challenge said juror. Whereupon, and before the completion of the jury in this cause, the defendant's counsel saw said Skiles, and he voluntarily made the following affidavit:

" 'THE STATE OF TEXAS, }
 " 'County of Dallas.  }

" 'Personally appeared before me L. F. Skiles, who upon oath says: Soon after the homicide alleged to have occurred herein, I read an account of the same in the Times-Herald, and heard it discussed by several persons in our lodge room, and expressed the opinion that the defendant was guilty, and should be hanged, if the facts were true as I read them and as stated to me. I read a part of the testimony in said paper, and I have the same opinion now. I further state, that the defendant would have to produce good, strong testimony before I would change my opinion, and would have to prove himself innocent before I would acquit him.  [Signed]  'L. F. SKILES.

" 'Subscribed and sworn to by L. F. Skiles, before me, this 13th day of March, 1894.  'GREEN WILLIAMS,
'Notary Public, Dallas County, Texas.'

"Which said affidavit was filed March 13, 1894, by the clerk of this court.

"And thereupon the defendant's counsel presented said affidavit to the court before the completion of the jury, and before the defendant had exhausted all of his peremptory challenges, having as many as four unexhausted, and which said affidavit being read by the court, the defendant then and there moved the court to set aside the peremptory challenge he had been compelled to make on said Skiles, and to excuse said Skiles on a challenge for cause, which request and motion thus made to the court was refused by the court, and said challenge peremptorily made remained charged against the defendant, to which action of the court the defendant then and there excepted, and reserves this bill of exceptions to the same.

"And be it further remembered, that during the impaneling of the jury one O. H. McComas was examined on his voir dire, and upon direct and cross-examination qualified himself unconditionally as a juror in said cause. Whereupon defendant's counsel then craved permission of the court to ask this juror if he had not frequently expressed the opinion that the defendant was guilty of murder and ought to be hanged, and did not at this time believe the defendant guilty of murder and ought to be hanged. And the court remarked that the juror had qualified; but the defendant's counsel requested to let said question be put to the juror and get an answer from this particular juror, when the court replied that he would grant the request in this instance—the defendant's peremptory challenge being exhausted—and thereupon

the defendant's counsel put said questions to said juror, and he answered both of them in the affirmative; whereupon the court of its own motion excused the juror, and remarked that he would not allow said question to be put to any more of the jurors.

"To which action and rulings of the court in holding said jurors competent, while refusing affirmative proof to the aforesaid questions to the jurors while being examined as aforesaid, and forcing defendant to either accept said jurors or peremptorily challenge them, the defendant then and there excepted, and tenders this his bill of exceptions to all of the same, and prays that it be filed and approved as a part of the record in this cause.

"Approved March 30, 1894.     "CHARLES F. CLINT, Judge, etc.

"Filed March 30, 1894:   J. H. STEWART, Clerk."

Eighth bill of exceptions: "Be it remembered, that on the trial of the above numbered and entitled cause, after the jury had been impaneled in this cause, and before any witnesses had testified or other testimony given on the trial to the jury, the defendant prepared and presented to the court his first supplemental motion for a change of venue, and attached thereto as a part thereof the whole and complete list of the special venire, comprising 297 names, and the venire of talesmen, comprising 141 names, all of which had been furnished him from which to select a jury in this cause. And which said lists containing the names of the veniremen, served upon him as shown in his motion, shows opposite each name the cause why said jurors (excepting those impaneled in the case) were excused from service. Which said first supplemental motion for a change of venue shows, that out of the 297 men summoned on the original special venire of 350, 210 of the same disqualified themselves on the ground that they had such an opinion as would influence their action in finding a verdict in this cause, and that such opinion, defendant expected to prove and offered to prove, was a prejudgment of the cause against the defendant; that of the remaining eighty-seven names summoned on the original venire, forty-six persons were absent from sickness and other causes unknown to the defendant, and were not brought into court at any time during the examination of said special venire; and from the remaining forty-one names the State exhausted four of its peremptory challenges and the defendant exhausted nine of his peremptory challenges, and six veniremen were accepted as jurymen in this cause, leaving twenty-two out of the forty-one disqualifying themselves for cause—said cause being conscientious scruples against the infliction of the death penalty as a punishment for crime.

"Said special venire being exhausted on Friday afternoon, March 9th, the court, on Saturday morning, March 10th, proceeded to have examined on their voir dire the six jurors of the regular panel of the week, and being thus examined, said six jurors disqualified themselves by reason of the fact that their opinions were such as would influence

their action in finding a verdict; and in each of said instances the defendant proposed and could have proved by each of said jurors that they had expressed the opinion that he was guilty as charged, and that they then believed that he was guilty of murder, and should be hanged for said crime; which proof the court forbade the defendant to make.

"Whereupon the court ordered the sheriff to summon a venire of talesmen of forty men, and the court adjourned until Monday morning, March 12, to complete the panel. And the defendant says, that from said forty-one men who were summoned, instead of forty who were ordered to be served, twenty-three of said talesmen disqualified themselves on the ground of opinion such as would influence their action in finding a verdict; and the defendant offered to show and prove, but was denied by the court so to do, that said twenty-three men not only frequently expressed the opinion that he was guilty of murder, but then believed that he was guilty and should be hanged for his crime. And by reason of which refusal he was compelled to exhaust four of his peremptory challenges, and only one juror was obtained; and the remainder of said talesmen disqualified themselves by reason of conscientious scruples and sickness.

"On Tuesday morning, March 13th, the court proceeded to complete the panel from a venire of talesmen of 100 men served on him on said morning by the sheriff; and before the panel was completed, seventy-seven of said number of 100 were examined—forty-three of whom thus examined disqualified themselves by reason of having such an opinion in the case as would influence their action in finding a verdict, and by whom the defendant could have proved, which was refused him by the court, that each of them had expressed the opinion that he was guilty of murder and should be hanged for the crime; and that they then believed that he was so guilty; and twenty-five of the seventy-seven disqualified themselves because they were opposed to capital punishment.

"The defendant says, that he was compelled and did exhaust his peremptory challenges by the time the juror J. R. Leake's name was reached, and said juror being held to be competent by the court, made the tenth man selected as a juror, and the remainder of the panel, to wit, and the two others besides said Leake were impaneled over defendant's protest—his challenges having been exhausted, and he was denied his offer to prove that they had expressed the opinion, and so believed at the time, that he was guilty of murder, and should be hanged for said crime.

"Whereupon the defendant then filed his supplemental motion for a change of venue, and exhibits thereto as aforesaid, and which said motion was subscribed and sworn to by the defendant on March 14, 1894, and the same filed and presented to the court on same day, with said motion and the exhibits thereto attached, and is here taken and included as a part of this bill of exceptions.

"And be it further remembered, that defendant offered to prove aliunde, as stated by him in his said motion, but the court refused him so to do.

"Whereupon the defendant tenders this his bill of exceptions, which embraces, as heretofore stated, all the matters complained of in the action of the court while hearing said supplementary motion, and which, upon being heard by the court, was overruled by the court. To which action and ruling of the court the defendant then and there excepted, and tenders this his bill of exceptions, and prays that the same be taken as a record of the court's action in the premises, and to be taken and approved in support of the defendant's original motion, and the testimony in support of it, made for a change of venue in this cause.

"Approved March 30, 1894.        "CHARLES F. CLINT,
                                "Judge Criminal District Court, Dallas Co."

"The above bill is signed and approved, with this qualification: That a great number of the special venire of 350, or of the 297 of that venire who were summoned, who were excused by counsel before the case was called for trial, and were not examined on their voir dire— but signed a statement on the back of their jury summons that they had expressed opinions—as to these jurors the court can not speak.

"CHARLES F. CLINT, Judge, etc.
"Filed March 31, 1894:   J. H. STEWART, Clerk."

Excerpt from supplemental motion for a change of venue: "Defendant further says, that there are now on the jury impaneled to try this case, jurors who believe in advance of the trial, and before hearing any of the facts of this case, that this defendant is guilty of the offense charged against him, and he should be hanged; and defendant here offers to prove that fact, if permitted to do so by the court; notably J. R. Leake, of either Dallas or Collin County.

"Defendant further says, as an evidence of the great prejudice against him and his case, that he refers the court to the testimony on his voir dire of one J. A. Swaffor, who testified: 'I don't suppose there is a man in Dallas County but what has said something about this case.'

"Defendant further shows, that the special venire of 297 men and the special venire of talesmen of 141 men, are composed of men some of whom reside in every precinct, every section, every nook and corner of Dallas county, and that those who have disqualified on said special venire by reason of opinion come from every portion of the county of Dallas, and testified to the existence in their respective localities and neighborhoods of an overwhelming, irresistible, and unappeasable prejudice against this defendant and his case.

"Defendant further shows to the court, that in the present state of public opinion and inflamed prejudice that exists against him in Dallas County, it is impossible for him to obtain a fair and impartial trial,

and as evidence thereof he refers to the testimony of O. H. McComas on his voir dire touching his qualifications as a juror in this case, which is hereto attached, marked 'D,' and made a part hereof."

In view of the disposition of the case on appeal, as made by the opinion, it is unnecessary to make a further statement, the matters stated above being the only ones, as will be observed, which were discussed and passed upon by the court.

*John L. Henry, Miller & Williams, R. E. Cowart, S. H. Russell,* and *Crawford & Crawford,* for appellant, filed a very able and elaborate brief, comprising ninety-three pages of printed matter, which is too voluminous to be reproduced. We only give that portion of it stating the grounds upon which they claimed that the court had erred in overruling defendant's motion for change of venue in the case, as follows:

Appellant filed his application setting forth both grounds of the statute, article 578. In support of both grounds there are ten compurgators. In support of the first ground there are thirty-one compurgators.

The State filed a contesting affidavit, signed alone by the county attorney, to which the appellant demurred, but his demurrer and exceptions were overruled by the court.

The contesting affidavit is confessedly defective, and the demurrer should have been sustained, but circumstanced as was appellant he was compelled to accept such issue as was tendered him by the court, and stand or fall upon the sufficiency of his exceptions. Davis case, 19 Texas Crim. App., 223.

> "Unjust decrees they make, and call them just;
> And we submit to them—because we must."

The trial court, before the evidence began on the issue presented by the motion, wholly limited the number of witnesses on a side to fifteen; and of its own motion stopped the testimony, and denied the appellant the right to introduce other proof in support of his motion; and then overruled the motion and put the appellant upon his trial. We submit:

1. That the motion presents the first and second grounds stated in article 578, Code of Criminal Procedure, and that both are supported by the affidavit of the appellant and that of ten compurgators.

2. That the first ground in said article 578, as to the existence of prejudice in Dallas County, etc., is supported not only by the compurgators who have sworn to both grounds, but by twenty-one other compurgators.

3. That the evidence of the witnesses who were permitted by the court to testify shows such prejudice on the part of the people of Dallas county as would make it highly improbable for appellant to obtain a fair and impartial trial.

4. That the statements of the ten compurgators who swore to the existence of both grounds named in the statute have not been attacked by the evidence of any witness called, pro or con, on said motion, only in so far as was stated by some, that they did not know of a dangerous combination, instigated by influential persons, etc.; but which testimony, being purely negative, can not and does not affect that which was stated positively to be true by the compurgators.

5. The editorials in the various newspapers in Dallas County, in connection with the testimony of several of the editors thereof, tend strongly to support the compurgators who have sworn to the second ground named in the statute, and absolutely corroborate the existence of the prejudice as sworn to by thirty-one compurgators under the first ground.

6. The honorable trial judge, when acting upon the motion, and in overruling the same, admitted that the evidence showed a prejudice against and a prejudgment of the cause of the defendant by the people of Dallas County; but inasmuch as it does not show a prejudice personal against appellant, the prejudice stated in the statute has not been established by the evidence.

7. Our contention is, in answer to this, that if the evidence shows a prejudice, by reason of which he can not obtain a fair and impartial trial, the statute has been complied with, and the motion should have been granted.

8. The purpose of the statute is to obtain a fair and impartial trial of the case.

9. Absolute ignorance may exist as to the defendant personally; and at the same time there may exist a knowledge of his case or of the act charged against him.

10. If the defendant is personally unknown, but the act charged against him is well known, and there exists such a prejudice against that act as to prevent a fair and impartial investigation of it, to the end that the law would be fairly and impartially administered— and it is the act by which he is alone to be judged—how is it possible to separate the crime from the man, or hold the man innocent but the crime infamous?

11. The issue is: can a fair and impartial trial be had on the presentment made by the indictment? If the defendant was personally disliked, and the act charged against him was unknown, the statute would be available. If he was personally liked, and there was a total absence of all knowledge of him that could create personal prejudice, but the act he committed, and circumstances causing him to commit it, were so understood by the people of the county as to cause them to prejudge the act, this would certainly be a prejudgment of him, by reason of the fact that he caused the very things to be done that were condemned and prejudged. It is the act that is to be tried, but it is the defendant that is affected by the result, and so if the act is condemned, the accused is the sufferer. There could be no effect without

a cause; and if the effect is hurtful, or is odious, and therefore condemned, does not this include a condemnation of the cause? And the only way to get rid of the effect is to remove the cause. The actor and the act are inseparable ; so is the cause and the effect, and the prejudice against one includes both.

12. Following the reasoning of the trial court in holding that the statute means that the prejudice must exist against I. G. Randle personally, and that the prejudice against, and prejudgment of his cause, are not what is meant, and that the crime can be separated from the criminal committing it, is to our minds on a par with reasoning such as this : that perjury could be hated, and the perjurer not; that treason could be abhorred, and the traitor not; that the lie could be denounced, and the liar applauded; that hypocrisy could be condemned, and the hypocrite commended; that the case could be tried and a verdict of guilty rendered, and the case hung, but the accused making the case, go "scot free."

13. Prejudice means prejudgment, and a prejudgment of the act is a prejudgment of the actor.

14. The evidence in support of this motion adduced by the appellant and the State establishes the fact, that the people of Dallas County had passed judgment upon this cause, and that that judgment was against the defendant; and in further support of this contention we ask the court to consider in connection herewith the ninth assignment of error, as reserved in bill of exceptions number 8, and which sets forth an additional motion made by appellant, and sworn to by him, and which was so made and sworn to by him after the jury had been impaneled in this cause.

15. By reference to the motion found on page 785 of the transcript, it will be seen that the defendant offered to make proof by the jurors who had just been impaneled, that they believed at that time that he was guilty of murder, and should be hanged for his crime; and that they were prejudiced against him. But it was denied him by the court, as shown by his bill number 8.

16. We cite this action upon the supplemental motion, and the further fact, as shown by said bill number 8, that from a total venire of 421 names, 282 were excused because of their prejudgment of this case, forty-six were absent, and fifty-one were excused for conscientious scruples—as the actual temper and condition of mind upon the part of the jurors towards appellant.

17. We refer the court to bill of exceptions number 7, which in our judgment fully establishes the fact, by a careful reading of the same, that a jury, fair and impartial, could not be obtained in Dallas County; that in order to get a jury to try this defendant, over his motion for a change of venue, it was necessary to make him accept as his triers jurors by whom he could have proven, at the time that they were impaneled, that they had not only frequently expressed the opinion that

he was guilty of murder, and ought to be hanged for the crime, but that they "believed at the time, when being examined, that he was guilty of murder, and ought to be hanged;" and by whom it could have been further proven, and the offer was made, that they not only had such belief, "but that they were prejudiced against the defendant," which proof the court denied the appellant the right to make.

18. Appellant protested that the jurors were prejudiced against him, and that they solemnly believed at the time that he was guilty of murder and ought to suffer an ignominious death, yet such proof was in every instance denied him, until the juror O. H. McComas was reached. Although this juror had apparently qualified, the court, upon being absolutely begged by defendant's counsel, consented for appellant to make the proof if he could by McComas—that he believed him guilty of murder, and should be hanged for his crime—which offer to make such proof was successful; and the court then refused any further proof of a like character. We cite this in support of the fifth assignment of error, as going to show the animus of the public mind towards appellant.

19. We also refer the court to bill of exceptions number 7, not only showing the action of the court in impaneling the jury in this case; and its action upon the venireman McComas; and its action in compelling the appellant to exhaust his peremptory challenges upon men who believed that he was guilty of murder and should be hanged, and were prejudiced against him; and of its action after appellant's challenges had been exhausted, in forcing upon him as his triers, jurors thus prejudiced and thus believing; but we also call the attention of this court to the affidavit of L. F. Skiles, shown in bill of exceptions number 7, and to the action of the trial court in compelling appellant to exhaust a peremptory challenge upon him, and the refusal of the court, after such affidavit had been made, to set aside said peremptory challenge as a charge against appellant.

20. In support of both of the grounds named in the motion, the affidavits of the compurgators were admitted in evidence by the trial court, and by reference to them it will be seen that ten compurgators swore to the existence of both grounds stated in the motion and the statute. The State failed to show that there did not exist a dangerous combination instigated by influential persons. The proof offered by the State as against this special ground is purely negative, and in no sense denies the fact deposed to by ten compurgators, yet the court found that no such combination of dangerous men, etc., existed.

*Harry P. Lawther*, Assistant County Attorney of Dallas County, for the State, filed a most interesting and able printed brief and argument, which we regret that want of space forbids us from publishing at length, and which can not well be condensed into a synopsis without doing great injustice to its merits.

DAVIDSON, JUDGE.—Appellant was convicted of murder in the second degree, his punishment being assessed at confinement in the penitentiary for a term of twenty years; hence this appeal.

When the case was called for trial appellant moved a change of venue, upon both grounds set forth in the statute. In support of both grounds there were ten compurgators; and in support of the first ground, to wit, prejudice, there were thirty-one. The contesting affidavit for the State was signed by the county attorney. The court, before the evidence began upon the issues involved in the motion, limited the number of witnesses to each side at fifteen, and of its own motion stopped the testimony, denied appellant the right to introduce further proof in support of the motion, overruled it, and put him upon his trial. The reasons for prohibiting the introduction of further evidence on the motion were: first, the evidence for and against it showed a prejudice in the county against the cause, and not the person of appellant; second, that this character of prejudice is not .contemplated by article 578 of the Code of Criminal Procedure, but the prejudice there meant must be limited to the individual, and does not extend to the supposed crime or the case. Reasoning from these premises, the court concluded that the change of venue should be granted, if at all, under the provisions of article 579 of the Code of Criminal Procedure, and that all such prejudice could be reached by testing the veniremen in regard thereto, under the provisions of subdivision 13 of article 636 of said code. That such was the view of the law entertained by the court is rendered certain by his language, set out in the bill of exceptions, to wit: "If prejudice against the case of the defendant and prejudgment of same constituted prejudice, such as is meant by the statute, then the defendant would be entitled to a change of venue. Now, I take it, that under the facts in support of this motion, a change of venue could only be had under article 579 of the Code of Criminal Procedure. And in order to warrant a change of venue under that article, the proper practice would be, before granting a change of venue, to first endeavor to procure a jury from the body of the people who know nothing of the cause. The defendant is, under our laws, guarantied the right to challenge for cause any man who has prejudged his case; and, until an effort has been made to procure a jury from the body of the people who have not so prejudged the case, I do not believe this court would be warranted in granting. a change of venue in this case."

The question here presented for our decision is, What is meant by the "prejudice" mentioned in article 578 of the Code of Criminal Procedure? Does it mean to prejudge the case? Or does it mean. antipathy, dislike, or hatred against the accused, separate and distinct from his crime? Or does it mean prejudice against the accused and his case? In our view of the law, it means either. If there is such a prejudice existing against the accused that he can not obtain a "fair trial by an impartial jury" in the county from which the venue is

sought to be changed, it is immaterial from what source this prejudice comes, or what cause or causes produced it. We think the correctness of this position can be demonstrated. Our Bill of Rights provides, that the accused in all criminal prosecutions "shall have a fair trial by an impartial jury." Art. 1, sec. 10. This language is of no doubtful significance. The trial shall be "fair," and the jury "impartial." "Impartial" means "not partial; not favoring one party more than another; unprejudiced; disinterested; equitable; just. Jove is impartial, and to both the same." Webst. Dict. As thus defined, "impartial" evidently means not favoring a party or an individual because of the emotions of the human mind, heart, or affections. It means that, to be impartial, the party, his cause, or the issues involved in his cause, should not, must not be prejudged. The accused in this State, under our Constitution and laws, is entitled to a "fair trial by an impartial jury;" and there is no other method provided by which an accused can be tried and punished. Looking to this supreme end, the Constitution has further ordained, that "the power to change the venue in civil and criminal cases shall be vested in the courts, to be exercised in such manner as shall be provided by law; and the Legislature shall pass laws for that purpose." Const., art. 3, sec. 45. This provision of the Constitution, when applied to criminal causes, could have been ordained but for the purpose of guarantying "a fair trial by an impartial jury," provided for by the Bill of Rights. Any other interpretation would render it meaningless, useless, "as sounding brass or tinkling cymbal." In pursuance of and in obedience to these high commands of the Constitution, the Legislature enacted, that "a change of venue may be granted on the written application of the defendant, supported by his own affidavit and the affidavit of at least two credible persons, residents of the county where the prosecution is instituted, for either of the following causes, the truth and sufficiency of which the court shall determine: (1) That there exists in the county where the prosecution is commenced so great a prejudice against him that he can not obtain a fair and impartial trial; (2) that there is a dangerous combination against him instigated by influential persons, by reason of which he can not expect a fair trial." Code Crim. Proc., art. 578. The single and only purpose for which this law was enacted was to secure the accused the right to a "fair and an impartial trial," which is the "fair trial by an impartial jury" guarantied by the Bill of Rights. This statute realizes and is based upon the fact that there may be "so great a prejudice" or such "a dangerous combination" against the accused existing in the county in which the prosecution is instituted that he can not obtain, or will be deprived of, "a fair and an impartial trial." The Legislature, as a cause for challenge, has also provided, "that the jury has a bias or prejudice in favor of or against the defendant," or "that, from hearsay or otherwise, there is established in the mind of the juror such a conclusion as to the guilt or innocence of the defend-

ant as will influence him in his action in finding a verdict." Code Crim. Proc., art. 636, subdivs. 12, 13. These provisions were enacted for the purpose of securing a fair and impartial trial, and apply as well to the State as to the accused. Construing them together, the word "prejudice," mentioned in subdivision 12, refers only to the person of the accused, and means hatred, ill will, dislike, antipathy, etc.

The law authorizing a change of venue proceeds upon the fact, that notwithstanding the most searching questions may be applied to the juror in regard to his bias or prejudice for or against the accused, or whether there is formed in his mind such a conclusion as to the guilt or innocence of the accused as will influence him in finding a verdict, still there may be in the county such a prejudice existing as to render it improbable that the defendant could receive a fair and impartial trial. If it be conceded that all obnoxious jurors could be kept off the jury by being questioned in regard to causes for challenge, then it would seem the law providing for a change of venue would be useless, and should have no place in our procedure, and the provisions of the Constitution would be without purpose, reason, or object—"unto the Jews a stumbling block, and unto the Greeks foolishness." If the juror who has formed an opinion—prejudged the case—can be detected and rejected, under the provisions of subdivision 13 of article 636, why can not the juror who has bias or prejudice in favor of or against the individual be detected in the same manner?

But it is contended, that if the accused is entitled to a change of venue, it is by reason of the provisions of article 579 of the Code of Criminal Procedure, which is as follows: "When an unsuccessful effort has been once made in any county to procure a jury for the trial of a felony, and all reasonable means have been used, if it be made to appear to the court, by the written affidavit of the attorney for the State or any other credible person, that no jury can probably be had in that county, the court may order a change of venue, and cause the reasons therefor to be placed upon the minutes of the proceedings." This article has no reference to or connection with article 578, and provides for a case in which the application for the change of venue may or may not have been made. It refers to that status of case "when an unsuccessful effort" has been made to obtain a jury. The danger in such cases is, that the effort will not be unsuccessful. The prejudice in the county may be such that jurors will qualify themselves who are not impartial, and a jury obtained, composed in whole or in part of such jurors. This is demonstrated by the record in this case. Veniremen O. H. McComas and L. F. Skiles, when tested on their voir dire, qualified themselves thoroughly by deliberately swearing they had formed no such conclusion as would influence them in finding their verdict. Appellant offered to prove by both that they had frequently expressed their belief that he was guilty, and should be hanged. He further proposed to prove by them that they then believed him guilty, and ought to be hanged. The court refused appel-

lant permission to ask Skiles these questions, but permitted them to be asked of McComas, making this exception to his rule, with the remark, that he would not allow other jurors to be thus interrogated on their voir dire, and accordingly, with the utmost strictness, enforced such ruling. When thus questioned, McComas replied that he had frequently expressed the opinion that appellant was guilty of murder, and should be hanged, and that he then so believed. He was challenged for cause, and the challenge was sustained. Appellant was not permitted to thus test Skiles, but he, however, obtained and filed his affidavit, in which he states, under oath, that he had expressed the opinion, and then entertained it, that appellant was guilty, and ought to be hanged, unless he could prove his innocence. Now, these instances show beyond question, that notwithstanding these tests, there may be such prejudice in the county that jurors will qualify who have deliberately formed a conclusion that the accused is guilty, and should be punished. If the accused is required to rely upon the provisions of article 579 for changing the venue, it must be made to appear that he could not obtain in the county a jury in any event, prejudiced or unprejudiced. But even should a jury be obtained, it would not follow that it did not contain prejudiced jurors. Again, it is conceded by the trial judge that there may be a prejudice against the individual which would authorize the change of venue. Now, why can not this prejudice be detected by pursuing the provisions of said subdivision 12 of article 636?

Let us view the question from another standpoint. The object of the Constitution, and laws enacted in accordance therewith, is to secure the accused a "fair trial by an impartial jury." When the juror has formed such an opinion in regard to the guilt or innocence of the accused as will influence his verdict, he is to be rejected; he is not impartial. If he is impartial, because he has formed an opinion against the cause of the accused, such impartiality would be as harmful, if not more so, than prejudice against him as an individual, separate and apart from the crime. The juror may dislike the accused, may be prejudiced against him as an individual, and yet rise superior to such feeling, and do him justice on the trial. But if he has formed an opinion that the accused is guilty—that is, such an opinion as will influence his verdict—the juror would much more likely do injustice than if only he is prejudiced against him as an individual, apart from his crime. Both are legal causes for challenge. Now, then, if there is as much, if not more, danger from a juror who has formed such opinion as to the guilt of the accused as there is from one who is prejudiced against him apart from his crime, with equal if not greater reason should such prejudice—prejudgment of the cause—be a ground for a change of venue. The distinction sought to be drawn by the learned trial judge, when viewed in the light of the Constitution, legislation upon the subject, and the history of this question, is to our minds a novel one indeed. We are cited to no authority in the support of

it, and we are of opinion that none is to be found. It is sui generis, at variance with our laws, organic and statutory, and we think subversive of our criminal jurisprudence. The learned trial judge admits, and so states in the bill of exceptions, that if prejudice means a prejudgment of the case, then such prejudice so pervades the county of Dallas that it would entitle appellant to a change of venue. He further states, that the testimony is not conflicting on this point; that the evidence introduced by both parties concurs in establishing the fact that such prejudice does exist in the county; and that that adduced on the part of the State was more explicit than that shown for the appellant. The assistant county attorney of Dallas County, in his argument upon the submission, contended, that nowithstanding the judge so held, and that his views may have been erroneous, yet if the evidence did not authorize the change of venue, the judgment upon this point should not be reversed. In this view of the question we can not concur. If the change of venue was not demanded under the facts of this case, then article 578 would seem to be a dead letter upon the statute book, and should be expunged from the code, as the ruling of the trial court, if correct, would certainly do. We think the lower court eminently correct in holding that, if prejudice meant a prejudgment of the case, the appellant was entitled to a change of venue, and we are of opinion he should have granted the motion and changed the venue.

In doubtful cases, or where there is a conflict in the testimony in regard to the issues involved in such motions, great deference is paid by this court, and indeed should be, to the judgment of the trial court refusing to change the venue of cases. Such is the uniform and harmonious line of decision in this State. The discretion of the court in this case has been exercised favorably to the accused in so far as the facts are concerned, but adversely to him upon the law applicable to the question. If in error as to the law, as the court evidently was, the appellant was clearly entitled to the change of venue. We will not pursue this line of discussion further, but desire to say, in regard to change of venue, that it frequently occurs that good men, honest citizens, swear that the accused can not obtain a fair trial because of prejudice in the county. Ignorant people, persons uninformed as to legal methods provided for obtaining juries, become apparently astonished at such affidavits, and inquire if it be true that twelve honest, fair men can not be found in a county with whom to try the accused. Such questions, by their frequency of occurrence, have almost ceased to cause surprise, but evidence a wonderful degree of ignorance. If the accused be accorded the right to select his friends, or those by whom he is willing to be tried as jurors, from the county, independently of the right of the State to participate in such selection, then it might be safely asserted that motions for change of venue, as a matter of fact, would be unknown to the practice in this State. But this is not true, and should not be; hence the jury must be selected under the

rules and by the methods prescribed by law, and all laws in regard to changes of venue are enacted with a view to this fact. As has been forcefully said by the Supreme Court of Iowa, in The State v. Nash, 7 Iowa, 371: · "The right to speedy and public trial by an impartial jury is guarantied by the Constitution of this State to all persons accused of crime. It becomes us not to place a light estimate upon a right secured to us by such high authority. It is important, to maintain the usefulness of our whole judicial system, that no suspicion of popular excitement in the administration of the law should be allowed to impair the public confidence in the fairness and impartiality of judicial proceedings. An excited state of public feeling and opinion is always the most unfavorable for the investigation of truth. Not only should the mind of the juror be wholly without bias and prejudice, it should not only be free from all undue feeling and excitement in itself, but it should be as far as possible removed from the influence of prejudice and feeling and excitement in others. A circumstance of small importance in itself may often, in the midst of a community stirred by passion and excitement, serve to turn the scales of justice. It is a difficult matter for a court in all cases to draw the true line of distinction, and to say when there is and when there is not such a state of popular feeling and prejudice as to prevent a fair and impartial trial. Every case must be judged by its own circumstances. * * * There is, however, to be guarded against, a feeling and a prejudice not only within but without the jury box; and a jury, however right their intentions, are not always proof against the sympathies of the crowd. Influence of popular excitement and prejudice is too strong for the strongest resolution."

We are of opinion, that appellant should have been permitted to ask jurors if they had formed the opinion that he was guilty, and then believed he was guilty and ought to be hanged. He was placed on his trial for murder—for murder in the first degree. Many questions had been propounded them to ascertain if they had formed an opinion which would influence their verdict. None had elicited such answer, or had the desired effect, it seems, but this question. The touchstone and keynote was thus discovered which probed and unlocked the consciences of the jurors McComas and Skiles, and the court, perceiving this, closed the door, and prohibited the question being asked the other jurors. This was a travesty on justice, and an infringement of the rules of justice, which should pervade every trial and overshadow every seat of judgment. Appellant was entitled to, and had been wrongfully deprived of, a challenge for cause to the juror Skiles, who, under his affidavit, was incompetent to sit as a juror on appellant's trial. He had thoroughly qualified himself by answering all questions propounded to him, yet, when tested by his own affidavit, disqualified himself completely. He not only shows and swears that he was prejudiced, that he believed appellant guilty, and ought to be hanged, but shows a degree of moral turpitude which should have operated to dis-

qualify him as a juror generally. From his affidavit it is conclusively shown not only that he thought, believed, that appellant was guilty and ought to be hanged, and that he would so find, but it is further shown therein that he would so say by his verdict, unless appellant proved his innocence. No question propounded to him had developed this condition of his mind, although he had been asked if he had formed such a conclusion as would influence him in finding a verdict. The question asked by appellant, but excluded by the court, would have done so, if the statements in his affidavit are to be credited.

The indictment was sufficient, independent of and without the amendment; therefore it was not affected by it. We deem it unnecessary to enter into a discussion of this question.

The questions suggested in regard to the supposed irregularities incident to the special venire will not likely arise upon another trial, and that question is not discussed.

The constitutional question in regard to the admission of the testimony of Plummer will be treated in another pending appeal; therefore it is here pretermitted.

The judgment is reversed, and cause remanded.

*Reversed and remanded.*

SIMKINS, Judge, absent.