## M. B. DOBBS V. THE STATE.

### No. 3533. Decided June 26, 1907.

**1.—Murder in First Degree—Change of Venue—Prejudice—Impartial Jury.**

Where upon trial for murder, the evidence showed, upon a hearing of a motion for change of venue, that there was so great a prejudice in the county against defendant as to preclude a fair and impartial trial of his case by a fair and impartial jury, it was error not to grant the motion.

**2.—Same—Circumstantial Evidence—Charge of Court.**

Where upon trial for murder the evidence showed that defendant was in such juxtaposition of the crime, from the State's standpoint, as to preclude the issue of circumstantial evidence; and the testimony of the defense showed that defendant and his son participated in the killing, and the intent with which said act was committed alone was to be ascertained, it was not necessary to charge on the law of circumstantial evidence.

Appeal from the District Court of Camp. Tried below before the Hon. P. A. Turner.

Appeal from a conviction of murder in the first degree; penalty, imprisonment in the penitentiary for life.

A statement of the facts of the case may be found in Dobbs v. State, 51 Texas Crim. Rep., 113, 100 S. W. Rep., 947.

The opinion states the case.

*Sam D. Snodgrass,* for appellant.—On question of change of venue, in addition to the authorities stated in the opinion: Cortez v. State, 69 S. W. Rep., 537; Smith v. State, 77 S. W. Rep., 453.

*F. J. McCord,* Assistant Attorney-General, and *Horace Vaughn,* District Attorney, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at confinement in the penitentiary for life.

This is a companion case to that of Milton Dobbs v. State, 50 Texas Crim. Rep., 100 S. W. Rep., 947.

The first ground of the motion for a new trial complains that the court erred in refusing to grant the application for change of venue. D. H. Carpenter, sheriff of Camp County testified that Camp County is a very small county, being only about twelve miles wide and thirty miles long; that there are about twelve hundred and fifty qualified voters in Camp County, two hundred and fifty of whom are negroes. That Pittsburg, the only town of any consequence in the county, is located about the center, and that Leesburg, precinct No. 2, where the killing occurred, had more inhabitants than any other precinct in the county, except Pittsburg precinct; that defendant had been confined in jail ever since the killing occurred, and that Milton Dobbs, defendant's son, had been confined with him in jail, charged as a principal in this killing; that Milton Dobbs' case was tried at the May term, 1906, and he was given thirty-five years in the penitentiary; that witness had heard as many as ten or fifteen individuals express their opinion about defendant's case; that they all thought him guilty; that he had never heard a single expression in his favor; that Milton Dobbs' trial attracted special attention, the court house being packed with people all during the trial; that witness had never heard any expression favorable to defendant; that when the county attorney closed his speech in the Milton Dobbs' case there was some applause; that he knew that the crowd that attended Milton Dobbs' trial was very much against the defendant. L. C. Ball testified that he lives six miles southwest from the scene of the killing; that witness had lived in the county about fifteen years; that he was acquainted with the people of his precinct generally, and knows the sentiment of his neighborhood; they are strong against the defendant; that he heard some people say he ought to be hanged; that he never heard an expression in defendant's favor; that the people have no sympathy at all for the defendant, but some little for Milton, his son; that he talked to twelve or fifteen jurors and heard ten or a dozen others talk in his presence; he heard altogether twenty-five or thirty persons, all being qualified jurors; that every expression he heard was against appellant, and from these expressions he knew the sentiment to be very strong against the defendant.

On cross-examination this witness was asked by the State, "Now Mr. Ball, do you mean to tell the court that your neighbors are so prejudiced against Mr. Dobbs that they could not give him a fair trial? A. Yes, sir; I believe it is just that way, from what I have heard them say."

W. T. Payne testified that he lived fifteen miles southeast of Pittsburg, in precinct No. 4, right in the southeast corner of the county, and about twenty miles from the scene of the killing, and that everybody in his precinct says appellant is guilty of murder in the first degree. My opinion is against the defendant, and everybody in my neighborhood is the same way.

C. G. Engledow, justice of the peace of precinct No. 1 of Camp County, testified that he had lived in Pittsburg eight years. "I am fairly well acquainted with the people throughout the body of Camp County. I heard of this killing the next morning after it occurred. Milton Dobbs' trial attracted unusual attention and a great many people attended the trial. The court house was full all the time. I know people attach more blame to the defendant on trial than they do to his son. The people whom I have heard talk were very bitter against him, some saying he ought to be hanged. Don't think I have heard any expression in his favor. The people I have heard talk did not live in any particular part of the county. I know the sentiment in Camp County is very much against the defendant. They are against him because they believe him guilty of murder."

Henry King testified he lived in precinct No. 3, about eight miles from the scene of the killing. People of his community express themselves as believing that this defendant was guilty of murder and ought to be punished. "I have never heard an expression in his favor."

T. J. Swafford testified he lived in Upshur County near Camp County line. I ran a mill in Camp County six months this year. I am well acquainted with the people of Camp County; helped them organize the county and Pittsburg has been my trading point for thirty-five years. I came in contact with a great many people of Camp County while I ran the mill last summer. I know the sentiment of the people of Camp County with reference to the defendant M. B. Dobbs' case; heard it very often repeated that it is the blackest crime that ever darkened the pages of Camp County; everybody I met talked about the case that way. I have heard expressions similar to this ever since the killing occurred. The sentiment is more bitter against Mr. Dobbs than I ever saw against any man in my life." On cross-examination the district attorney asked the witness the following question: "Do you mean to tell the court that the men you have talked with were so prejudiced against this man they could not give him a fair trial?" He answered, "A good many of them are; that is, in my judgment." "The expressions I heard lead me to believe that the people of this county have enmity against the defendant because of this crime, because they thought him guilty of cold blooded murder."

In all about a dozen witnesses testified substantially to the same facts. The State introduced no evidence in rebuttal to the above testimony, and the court approves the bill overruling the application for change of venue with the following explanation: "Neither the deceased nor the defendant were known in Camp County, except in their immediate neighborhoods; they lived in 400 yards of each other, and the deceased married the sister of the defendant. The offense was committed on the fifth of May, 1906; an examining trial was had in a few days afterwards. The defendant and his son, Milton Dobbs, were indicted about the last of May, and Milton was tried and convicted June 6, 1906; of course these occurrences caused considerable

talk in the county. The country people being very busy, only a few of them heard the examining trial, or the trial of Milton Dobbs. There was no prejudice at all in the county against defendant individually; only a few people knew him. A good many people formed opinions in the case from hearsay. But this prejudice against the case was not to the extent of even making a fair and impartial trial difficult. Very few jurors were disqualified because of opinions from the evidence. It was not difficult to secure a fair trial by an impartial jury. We secured a jury out of about 125 jurors; not a man on the jury who had an opinion of any kind. There was some prejudice in the county against the case of the defendant and a good many had formed opinions from hearsay, but by no means sufficient to defeat a fair and impartial trial. The talk in the county had entirely subsided and the case had scarcely been mentioned for four months preceding this trial." The explanation of the trial court nowhere contravenes the undisputed testimony of the witnesses, or at least it does not deny that the witnesses testified as contained in the bill of exceptions. The explanation seems to be more an expression of the trial court's views about the matter than an explanation of the evidence adduced upon the trial. At any rate, the facts in the case, in addition to those above recited, show that Camp County was in the shape of a triangle; the base of the triangle was west, running to a point on the eastern side; that it was about thirty miles long and at the widest place eleven or twelve miles wide, and something near 1,200 jurors in the county. Pittsburg was the largest town. The examining trial of appellant's son and appellant was had in the town of Pittsburg, and subsequently appellant's son was tried and convicted for the same offense that appellant in this case was convicted for. The uniform expression of the witnesses, although they all express themselves personally unfavorable to appellant's case, irresistibly leads us to the conclusion that there was so great a prejudice in Camp County against appellant as to preclude a fair and impartial trial of his case by a fair and impartial jury. While it is true the trial court certifies that they readily secured a jury out of something over 100, yet the record is replete with the suggestion and same is enforced upon our minds that there was so great a prejudice in Camp County against appellant as to lead to a satisfactory conclusion that appellant in all human probability could not get a fair and impartial trial in said county. The Constitution of this State demands for an appellant a speedy trial by a fair and impartial jury. This beneficent provision of the Constitution is invoked in this case. It seems violated in spirit if not in letter in overruling the application for change of venue. We accordingly so hold. For a discussion of rules governing matter on questions as to change of venue, see Randle v. State, 28 S. W. Rep., 953; Meyers v. State, 46 S. W. Rep., 817; Gallaher v. State, 50 S. W. Rep., 388, and Barnes v. State, 59 S. W. Rep., 882.

Various questions were raised by appellant in the organization of

the jury in this case. In view of the fact that these same questions cannot arise upon another trial of this case, it would be useless here to review same. Appellant, however, insists the court erred in failing to charge the law of circumstantial evidence. Appellant's wife saw the difficulty, and testifies to the shooting of deceased by her son, appellant being present at the time. Furthermore, the State's testimony shows that a witness a couple of hundred yards away heard a gun fire at the spot where deceased was subsequently found, and in a few moments saw appellant and his son, his son having a gun, coming from the direction of where the deceased was subsequently found. The witness walked up the road in company with another witness, and discovered deceased lying on the ground shot, and these facts place appellant in such juxtaposition of the crime, of themselves, from the State's standpoint, so as to preclude the issue of circumstantial evidence. Be this as it may, the defense's testimony shows that appellant and his son participated in the killing. This alone would remove the case from the realm of circumstantial evidence. The only remaining issue, what was the motive of appellant in doing the killing. While his wife testifies to a case of self-defense, still it shows the agency of appellant in the killing, and where the act is established by positive evidence, and the intent with which said act is committed alone is to be ascertained, then the case is removed from the realm of circumstantial evidence, and we accordingly hold that it was not error for the court to refuse to charge on circumstantial evidence, but for the error of the court in refusing change of venue in this case, the judgment is reversed and the cause remanded.

*Reversed and remanded.*