## R. G. COX v. THE STATE.

### No. 6310.   Decided October 5, 1921.

**1.—Assault with Intent to Rape—Sufficiency of Evidence.**

Where, upon trial of assault with intent to rape, the evidence was sufficient to support the conviction, there was no error on that ground.

**2.—Same—Change of Venue—Prejudice—Compurgators—Practice in Trial Court.**

The application for change of venue may be controverted by an affidavit of some credible person attacking the credibility of the compurgators or their means of knowledge, and the court will then determine from the evidence upon the issue thus made whether the application should be granted; but the discretion of the court is not arbitrary.

**3.—Same—Newspapers—Publication—Prejudice—Case Stated.**

The inference of prejudice requiring a change of venue is not to be drawn from the fact alone that newspapers published in the vicinity contained articles descriptive of the offense alleged against the defendant and denunciatory of him, but such publication and circulation is generally received and considered relevant. Following Gallagher v. State, 40 Texas Crim. Rep., 296, and other cases; and where such publication did not confine itself to give the public news, but urged that the offense of the defendant, of which he had been formerly tried and acquitted, was so rank that a public official who had suffered his acquittal should be discredited and retire, the same was sufficient cause for a change of venue.

**4.—Same—Burden of Proof—Prejudice—Rule Stated.**

The burden is not upon the accused to show that the prejudice against him or against his case is such as to render a fair trial impossible, but if there exists a prejudice such as rendered it improbable that a fair and impartial trial should be had, he is entitled to have his application granted. Following Randle v. State, 34 Texas Crim. Rep., 59, and other cases; and it is not necessary that such prejudice grew out of the offense on trial but out of a false accusation relating to his former conduct. Following Barnes v. State, 34 Texas Crim. Rep., 59 and other cases.

**5.—Same—Prejudice—Rule Stated.**

The law authorizing a change of venue proceeds upon the fact that notwithstanding the most searching questions may be applied to the juror in regard to his bias, or prejudice, or opinion, still there may be in the county of the prosecution such a prejudice existing as to render it improbable that the defendant could receive a fair and impartial trial, and in this event the venue should be changed, and it was immaterial in the instant case that the members of the venire who tried the defendant stated that they had no bias, or prejudice, or opinion. Following Faulkner v. State, 43 Texas Crim. Rep., 311, and other cases.

**6.—Same—Case Stated—Prejudice—Change of Venue.**

Where in the instant case the testimony of all the witnesses was to the effect that the prejudice contemplated by the statute existed and permeated the county of the prosecution, and which was created by the circulation of the newspapers containing certain derogatory statements concerning the defendant, growing out of his acquittal in another case, etc., the venue should have been changed; especially where the verdict against the defendant was for a felony and imprisonment for 10 years in the penitentiary, and that

of his companion, against whom there was no such prejudice was only that of a misdemeanor.

Appeal from the Criminal District Court of Harris. Tried below before the Honorable C. W. Robinson.

Appeal from a conviction of assault with intent to rape; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*S. B. Ehrenwerth,* and *Garrison, Pollard, Morris & Berry,* for appellant.—On question of personal opinion of court on question of change of venue: Leonard v. State, 53 Texas Crim. Rep., 190; Pearson v. State, 56 id., 610; Dobbs v. State, 51 id., 629, and cases cited in opinion.

*R. H. Hamilton,* Assistant Attorney General, and *E. T. Branch,* District Attorney, for the State.—On question of change of venue: Buie v. State, 1 Texas Crim. App., 455; Gaines v. State, 38 Texas Crim. Rep., 202; Harrison v. State, 43 S. W. Rep., 1002; Red v. State, 53 id., 618; Earles v. State, 85 id., 1; Bohannan v. State, 14 Texas Crim. App., 271.

MORROW, PRESIDING JUDGE.—Adjudged guilty of an assault with intent to rape, appellant is condemned to confinement in the penitentiary for ten years.

A companion case is that of Robert Mooring, affirmed on this date.

The details of the transaction are not materially different from those revealed in Mooring's case. The two young men and two young girls, after meeting at a public dance, went riding in an automobile, and upon reaching a point several miles from the city of Houston, each of the young men made an assault upon his female companion. Resistance and outcry were made attracting the attention of a resident who interfered, taking charge of the girls; appellant and Mooring returning to the city.

The description of the assault given by the prosecutrix, Jonetta Crenshaw, was, in our judgment, sufficient to support the conviction. She said that appellant was driving the car, after turning out the lights, put his hands upon her and prevented her from getting out of the car, choked her, tore her clothes, and insisted that he was going to accomplish his purpose, put his hands on her person; that she screamed and continued to scream until Mr. Ulrich came to her aid.

Appellant claimed that he was induced by the conduct of the prosecutrix to believe that his familiarity with her would meet with no objection, and that he had no intent to force her to submission. He detailed a state of facts which, if believed, might have reduced his offense to aggravated assault.

A motion for change of venue upon the alleged existence of prejudice was made in due time. The means of knowledge of the compurgators was controverted. The appellant introduced evidence; the State did not.

The evidence disclosed that about a year antecedent to his trial, appellant had been tried for murder and acquitted; that a political campaign followed in which the manner of his trial and the justice of his acquittal were featured in a spirited race for district attorney. The incumbent of this office was opposed by another, who, in his speeches and by the circulation of printed matter, sought to convince the voting public that the incumbent was unworthy of re-election, citing appellant's trial as evidence. The controversy continued for some six months. The cause of the opposing candidate was espoused by a daily paper published in the city of Houston and circulated throughout the county, having a large circulation and being read, according to the evidence, daily by about 100,000 people. Two or three thousand copies of some issues of this paper containing references to the appellant's case were obtained and circulated throughout the county by the friends of the opposing candidate. In various issues of the paper appellant's trial was described. In some of the issues the speeches of the opposing candidate were reproduced, and there were published statements of others to the effect that appellant, in another county, had been guilty of felonies; that he bore a bad reputation. It was shown that a brother of the deceased was a man of influence in Houston, occupying a responsible position in the public service; that he was bitter in his denunciation of the result of the trial of the appellant. It was also shown that labor organizations of the city sympathized with the prosecution, criticised the acquittal and claimed that the appellant should have been convicted of murder. Upon the happening of the event upon which this prosecution rests, an account of it was carried in the press and appellant's identity as the man who had previously been charged with murder was disclosed.

Most of the witnesses gave the opinion that there existed against the appellant such prejudice as precluded the probability of obtaining a fair trial. Those most unfavorable to him tended to sustain the truth of his motion. From one of these we quote:

"In a county of this size I think it is possible he can get a fair trial but I do not think it is probable. I believe there is still a fixed prejudice against him in this county."

The presentation of an application for change of venue properly verified makes it incumbent upon the trial judge to change the venue unless the application is controverted in the manner prescribed by statute or unless the controverting affidavit is waived by the accused, and evidence heard justifying the denial of the motion. Moore v. State, 46 Texas Crim. Rep. 57; Carr v. State, 19 Texas Crim. App. 656; Davis

v. State, 19 Texas Crim. App. 222; Logan v. State, 39 Texas Crim. Rep. 574; Lemons v. State, 59 Texas Crim. Rep. 304.

The application may be controverted by an affidavit of some credible person attacking the credibility of the compurgators or their means of knowledge. Code of Crim. Proc. Art. 632. When so controverted, the statute says: "The issue thus formed shall be tried and determined by the judge, and the application granted or refused as the law and the facts shall warrant." The appellant presented a number of witnesses, who testified to facts within their knowledge, upon which they based an opinion coinciding with the averments in the application. It was his duty, as said in the statute, to try the issue and determine it according as the law and the facts should warrant. The discretion to refuse it was not an arbitrary but a judicial one, and the facts that were before the court, having been brought here, the duty rests upon this court to determine whether, in the proper exercise of judicial discretion, the application should have been denied. It is a general and wholesome rule, we think, which declares that the inference of prejudice requiring a change of venue is not to be drawn from the fact alone that newspapers published in the vicinity have contained news articles descriptive of the offense or editorials denunciatory of the accused. Downs v. State, Amer. & Eng. Ann. Cases, Vol. 18, page 789, and notes; Ruling Case Law, Vol. 27, page 816, Sec. 36. Evidence, however, of such publications and their circulation is generally received and considered relevant. People v. Suesser, 132 Cal. 631; Com. v. Ronemus, 205 Pa. St. Rep. 420; Downs v. State, *supra*. This rule has been applied in this state in Gallagher v. State, 40 Texas Crim. Rep. 296; Faulkner v. State, 43 Texas Crim. Rep. 311; Cortez v. State, 44 Texas Crim. Rep. 169; Fleming v. State, 62 Texas Crim. Rep. 653.

The publications which were described in evidence and introduced were not confined to giving to the public news but were pressed with vigor for months by a widely-read publication in urging that the offense of the appellant was so rank that a public official who had suffered his acquittal should be discredited and retired. It published letters purporting to come from the former abode of the appellant, declaring that in another county he had committed felonies of the most revolting type. It carried in its columns excerpts from the speeches of those who sought to supplant the district attorney because of his failure to convict the appellant of murder, and by its editorials advocated the election of the opposing candidate, basing its advocacy, in part, upon the failure to convict the appellant of murder. Articles denunciatory of the offense charged to appellant were not confined to the paper mentioned, but appeared in another of wide influence and circulation. Reliance is not had upon newspapers alone, however, but in connection with them notice must be taken of the evidence that speeches were made through the county in which the appellant's misdoings were the subject of comment, and the miscarriage of justice in

his acquittal urged as an element in the political campaign, and in which his reputation in the counties in which he had previously lived was assailed. The interest of the labor organizations, according to the evidence, had been aroused against the appellant and their activity enlisted in the political campaign by reason of the homicide with which he had been charged. With these facts, adduced from witnesses whose credibility was not questioned, controverted by no proof from the state, was the decision of the trial judge the proper exercise of judicial discretion? The testimony of each of the witnesses went to sustain the allegations in the motion.

The burden was not upon the appellant to show that the prejudice against him or against his case was such as to render a fair trail impossible. If there was such existing prejudice as rendered it improbable that, pursuing the methods provided by law, a fair and impartial trial of his case could be had, he was entitled to have his application granted. Randle v. State, 34 Texas Crim. Rep. 59. If there existed such prejudice against the appellant, its source was immaterial. It might have grown out of this offense or out of false accusations relating to his former conduct. It is not essential that it grow out of the immediate case. If it existed to the degree contemplated by the statute, the law imposed mandate that the case be transferred to a locality unaffected by such prejudice. Barnes v. State, 42 Texas Crim. Rep., 297, 59 S. W. Rep., 882; Randle v. State, 34 Texas Crim. Rep., 43; Gallagher v. State, 40 Texas Crim. Rep., 296.

In Gallagher's case (40 Texas Crim. Rep., 296) from the city of Galveston, though the evidence on the issue of prejudice was conflicting, that supporting the motion was held of such weight that its disregard was treated as an abuse of discretion.

In Faulkner's case (43 Texas Crim. Rep., 320) from Dallas County, the evidence was one way, and supported the theory of prejudice rendering a fair trial improbable.

The action of the trial judge in refusing a change of venue was held an abuse of discretion; so in Barnes v. State, 59 S. W. Rep., 882; Randle v. State, *supra,* and Fleming v. State, 62 Texas Crim. Rep., 653.

The facts in the case of Fleming v. State, *supra,* are analogous. Fleming was an officer in a bank which failed and was charged with a criminal offense in connection with the management of the affairs. The matter was discussed in the press and in a political campaign between the contending candidates for the office of county attorney. The indictment and conviction followed. In holding that the venue should have been changed from Dallas County, the court said:

"The papers had taken up the matter and discussed it, and these papers were shown by this record to have a wide circulation all over the county. These matters had become household words in every nook and corner of the county. It is to be deprecated that things of this sort should be injected into local politics. Such proceedings are

conducive to the mob spirit. A party who is charged or suspected of violation of the criminal laws is entitled, wherever a conviction is sought, to a fair trial before an impartial jury."

In the instant case, the learned trial judge, in qualifying the bill, discloses that after the evidence was closed, he interrogated the members of the venire and urged them to disclose, without reserve, any feeling of bias, or prejudice or opinion, and that but one declared that he had an opinion, the others remaining silent. The privilege of questioning the parties was extended but no questions were asked on the matter of change of venue. The jury was obtained from the original panel for the week of thirty-six men.

The evidence adduced upon the motion for change of venue and not the qualification of the trial court is the measure. Faulkner v. State, 43 Texas Crim. Rep., 320.

In Dobbs' case, (51 Texas Crim. Rep. 632) the qualification, not different in substance from that in this one, was held by the court not to overcome the evidence in support of the motion for change of venue introduced by the appellant, none being produced by the state, this court said:

"The explanation of the trial court nowhere contravenes the undisputed testimony of the witnesses, or at least it does not deny that the witnesses testified as contained in the bill of exceptions."

And further: "While it is true the trial court certifies that they readily secured a jury out of something over 100, yet the record is replete with the suggestion and same is enforced upon our minds that there was so great a prejudice in Camp County against appellant as to lead to a satisfactory conclusion that appellant, in all human probability, could not get a fair and impartial trial in said county."

The court's qualification, even if considered as evidence, is not sufficient to outweigh the sworn testimony of witnesses, and the effect of the documents that were introduced in evidence. Pertinent remarks are found in Randle's case, *supra*, in which it is said:

"The law authorizing a change of venue proceeds upon the fact that, notwithstanding the most searching questions may be applied to the juror in regard to his bias or prejudice or opinion, still there may be in the county such a prejudice existing as to render it improbable that the defendant could receive a fair and impartial trial. If it be conceded that all obnoxious jurors could be kept off the jury by being questioned in regard to causes for challenge, then it would seem the law providing for a change of venue would be useless, and should have no place in our procedure, and the provisions of the Constitution would be without purpose, reason, or object—'unto the Jews a stumbling block, and unto the Greeks foolishness.' "

In the case before us, the evidence of all the witnesses who testified was to the effect that the prejudice contemplated by the statute existed and permeated the county. They detailed facts supporting this opinion,

which, considered in the light of precedents and experience, cannot be said to be an insufficient predicate to the opinions expressed. Neither the evidence establishing the facts, or the opinions based thereon were controverted by any testimony. It was all one way. It came from documents and from the lips of admittedly credible witnesses; it contained no such inherent weakness as warranted its disregard.

Appellant's companion was tried in the same county about the same time on the same issues with practically the same evidence before the jury. He had been accused of no previous offense. The incidents of no past trials of his had become the subject of debate or comment in a political campaign. Upon the merits of his case the jury found him guilty of misdemeanor. Appellant was convicted of a felony and his punishment fixed at a long term in the penitentiary. The failure to change the venue was the subject of complaint in the motion for new trial. The trial and result of the companion case was brought to the attention of the trial court.

In the light of it and in view of the heavy verdict and the prejudice shown, without controversy, to have existed, we are of the opinion that a new trial should not have been denied. Barnes v. State, 42 Texas Crim. Rep., 297, 59 S. W. Rep., 883.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*