## C. A. JOHNSON v. THE STATE.

No. 11788. Delivered May 23, 1928.

The opinion states the case.

*T. J. Cunningham* and *R. N. Grisham* of Eastland, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, JUDGE.—Offense, manslaughter; penalty, five years in the penitentiary.

The fatal difficulty occurred in the hotel room of one Mae Caldwell about ten o'clock P. M. The testimony for appellant supported his theory that he shot at State's witness Doc Elliott in self-defense and accidentally killed the deceased, John Harris. His evidence tended to show that Doc Elliott was armed with a pearl handled pistol at the time of the fatal difficulty and circumstances were introduced tending to show that this pistol came from the room of Geneva Workhizer, a witness who was placed upon the stand by appellant. Doc Elliott denied having the pistol of the witness. Witness Geneva Workhizer was asked by appellant if she did not turn her pistol over to Doc Elliott about seven o'clock on the evening of the trouble. She denied this. She was asked further if she did not ask Doc Elliott for her pistol two or three days later, in her reply to which she stated that she did not know who got her pistol. She was then asked if she did not hear Doc Elliot make the statement, "The pistol was lost in the trouble last night and I can't give

you the pistol," to which she answered that she did not remember, and the Court stated: "I am not going to permit you to impeach this witness. If you want to ask her impeaching questions, I am going to sustain the State's objection if they make one." The Court refused to permit appellant to contradict her in any way. The appellant's counsel claimed to be surprised at her testimony, and claimed to have talked to her just before he put her on the stand and offered to show statements given at a former trial contradictory to those testified to in the instant trial. Her testimony on a former trial is appended to the bill and shows that she testified in part as follows:

"I turned the pistol over to Doc Elliott about seven o'clock that evening. * * * The next time I talked to him about the gun was several days after when I asked him if he could let me have some money because I needed it. I asked for the gun if he couldn't give me the money and he told me that the gun was lost, had gotten lost in the trouble. * * * I have not ever received my pistol back from Elliott or compensation for it."

Where a party offering a witness has been led to believe that the answers of such witness will be favorable and such answers instead are hurtful to him, he will be permitted to contradict such a witness by proof of former statements made by witness in line with what the witness was expected to testify. The answers of the witness in this case were hurtful in that they directly contradicted the theory and some of the circumstances showing that Elliott was armed with her pistol. Appellant had the right to presume that the witness would again testify to what she had formerly said under oath. There is nothing in the record to show lack of surprise or good faith by appellant. Her answers were upon a contested and very material issue and the action of the Court in this matter was in our opinion prejudicially erroneous and presents reversible error. White v. State, 62 S. W. 749; Jeter v. State, 52 Tex. Crim. Rep. 216, 106 S. W. 371; Baum v. State, 60 Tex. Crim. Rep. 638, 133 S. W. 271; Layton v. State, 61 Tex. Crim. Rep. 507, 135 S. W. 557; Harris v. State, 148 S. W. 1071; Perry v. State, 155 S. W. 265.

As previously stated, it was the theory of appellant that deceased was shot accidentally and he offered to prove by three witnesses that they heard the deceased, John Harris, remark that he was shot accidentally. It is alleged in the bill that this occurred from five to forty minutes after the shooting. The Court qualified appellant's bill with the statement that the testimony of the above witnesses

shows that they did not know how long after the shooting that the witness heard the statements of the deceased. It is doubtful if the bill is sufficient to properly present this matter.

Time alone is not the test. All the material facts and circumstances attendant upon this transaction from the shooting until the time this statement was made should have been set out in the bill so as to enable this Court to determine whether or not such declaration came within the res gestae rule, as every such matter must be measured by its attendant surroundings.

Ed Pancake, one of these witnesses, testified:

"It was reported to me that night that there was a shooting then in progress down at the Hotel. When that was reported to me, I went immediately to the sanitarium. I do not know how long it took me to go down there. I went just about as fast as a fellow could walk to see a man. It was three or four hundred yards to the sanitarium. It took me about five minutes to get to the sanitarium. I went into the room where I found John Harris and had a conversation with him." Cross-examination by the Court: "I do not know how long it was after the shooting when I went to the sanitarium. I do not know how long it was."

We do not think the Court was justified in rejecting this testimony merely because the statements of the witness on cross-examination by him was to the effect that he did not know how long it had been. The circumstances testified to showed clearly that the time was short.

No hard and fast rule applicable alike to all cases can be laid down. The best that can be done is to state the general principles governing such evidence. Of such it has been said:

"The general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to actual sensations and perceptions already produced by the external shock." Wigmore's Evidence, Sec. 1747.

The original English rule required that such statements be contemporaneous with the transaction, but that we have departed far from this rule is made obvious by an examination of the authorities. If the utterance is instinctive and made under the active influence of the transaction, it is admissible. For a more detailed statement of the rule, see Chapter 16, Underhill's Criminal Evi-

dence, Third Edition, Sections 160, et seq. Also Branch's P. C., p. 53, for collation of authorities.

The profferred testimony in this case was upon a vital matter. The attendant circumstances incline us to the view that same was admissible, though a fuller development of same on a subsequent trial may show otherwise. We have said this much in view of another trial.

The question is presented by various bills of the refusal of the Court to permit the appellant to prove that the State's witness Doc Elliott had the reputation of being a professional bootlegger. Such testimony is not admissible and we do not think any of appellant's bills show reversible error. If there was any serious question about the matter, it was cured by the testimony of Doc Elliott himself, who brazenly admitted on the witness stand that he was all that the appellant claimed he was.

Many bills of exception are found in the record. Of these some are clearly without merit and the remainder present matters not likely to again occur and will not be discussed.

Because of the error above discussed, the judgment is reversed and cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.