## CECIL SMITH V. THE STATE.

No. 15877.   Delivered March 29, 1933.
Rehearing Denied June 23, 1933.
Reported in 61 S. W. (2d) 835.

The opinion states the case.

*Joe W. Taylor, John N. Gauntt,* and *W. E. Davidson,* all of Waco, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, thirty-five years in the penitentiary.

The record contains no bills of exception. There are a number of exceptions to the court's charge. We find nothing in the very general exception to said charge as being on the weight of the evidence. The charge in the cited case of Best v. State, 58 Texas Crim. Rep., 327, appears altogether different from that herein given, as was also that in Meadow v. State, 94 Texas Crim. Rep., 608,' also cited, in which we said that a shooting upon malice aforethought could neither be manslaughter nor in self-defense. Appellant's right of self-defense was adequately presented in this case as will presently appear.

There was an exception to the charge as an improper limita-

tion upon appellant's right of self-defense, in that the court gave no instruction upon his right to defend himself against any character of attack. Taylor v. State, 56 S. W. (2d) 646, is cited. In that case, beyond question, it is true that the accused was attacked by deceased and his brother, if at all, only by the use of hands and fists, in which event one having slain his assailant might be heard to claim injury upon his trial if his right of self-defense, as submitted in the charge, be limited to an attack threatening death or serious bodily injury. In other words, the law applicable, is in every case governed by the facts of that particular case. In the case now before us appellant himself swore repeatedly that deceased was attacking him with a knife. We quote: "I shot Ernest Holmes because he was cutting at me with a knife. I believed he intended to kill me with the knife." In another place he said: "Ernest rushed out with a knife in his hand. He just lunged right into me and we got to scuffling * * * my shirt was nearly torn off me. * * * He struck me once with the knife. * * * If I had been a little closer it would have cut me wide open. *. * * I had a gun in my bosom. * * * I pulled the gun out of my bosom and threw it down on Ernest and he slapped at the gun. The first shot went in the mail box, and the second shot hit Ernest Holmes in the side."

There was in this case no testimony calling for any charge on self-defense against an attack less than deadly. The state's testimony showed that appellant fired four or five shots at deceased, all save the first, while deceased was trying to get away. Mr. Laughlin swore that he heard a shot which he thought was the back fire of a car. He at once looked out and saw a man running, and another man following him who shot twice more. Laughlin went out and saw deceased on the sidewalk. About the time he got to the door two more shots were fired from a car. Haverson swore that he saw deceased out in front of his store; saw appellant out there also. Heard a shot, and at once looked out. Deceased was about seven feet from appellant. Deceased turned off and appellant shot at him twice. Deceased went on toward the other side of the street. Appellant's pistol was pointed toward deceased when it was fired. Appellant then got in a car and went in the direction taken by deceased, and witness heard two more shots from the car. Deceased was in his shirt sleeves. Other testimony to the same effect was introduced. Doctors said deceased was shot in his left side, the bullet going through the body perforating the liver and intestines.

Appellant was his own only eyewitness. He said the trouble arose over ugly words used by deceased toward a woman who was in a car with appellant, a few moments before the fatal difficulty, and that deceased then also called appellant vile names. He testified that after taking the woman home he and a cousin of his came back to the place of the homicide where deceased renewed the difficulty and attacked appellant with a knife, from which attack he feared deceased would kill him. Neither the woman mentioned nor appellant's cousin were used as witnesses, nor any reason offered why they did not so appear. The woman was shown to be in Waco at the time and a frequent visitor at the jail where appellant was confined.

We see nothing in the case calling for any effort on the part of the trial court to differentiate between self-defense as against the first and subsequent shots fired by appellant. The jury were told in the charge that, if appellant was justified in firing the first shot, he would also be justified in continuing to shoot as long as danger, real or apparent as considered from his standpoint, continued to exist.

We have carefully examined all the complaints in the light of appellant's brief, but are constrained to believe no error appears in any of them.

The judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—It is urged on motion for rehearing that the jury should have been instructed upon appellant's right to defend against an attack less than one threatening death or serious bodily injury. We said in our original opinion it was not error for the trial court to submit appellant's right to kill only in case deceased had made, or was about to make, an attack on him which from the manner or character thereof caused him to have a reasonable fear or expectation of death or serious bodily injury, as viewed from his standpoint at the time. Appellant urges that the cases of Hathcock v. State, 103 Texas Crim. Rep., 518; Britton v. State, 95 Texas Crim. Rep., 209; Schutz v. State, 96 Texas Crim. Rep., 287, and Holcomb v. State, 98 Texas Crim. Rep., 456, hold contrary to what we there said. We observe that upon the facts depends the law of any given case. In Hatchcock's case the right of self-defense asserted was against a fist attack by the injured party. In Britton's case there was a conviction of aggravated assault, and a plea of self-defense as against bricks thrown by the injured party, with nothing showing a deadly attack by him. In Schutz's case the

defense was that there was a threatened attack only, and Judge Morrow in the opinion says there was little to show what kind of an attack the party was about to make. In Holcomb's case the claim was that Skaggs assaulted Holcomb and threatened to whip him, whereupon Holcomb cut him with a knife. In the case before us, appellant, as we set out in our former opinion, bases his right to kill Holmes wholly on the fact that Holmes had a knife with a blade at least two and one-half inches long, and had cut at and cut appellant with said knife repeatedly. We again quote: "I * * * pulled this door open like that. Ernest (deceased) busted out on me; never said a word. * * * Hit me on the forehead. Rushed out with a knife in his hand. Ernest had never said a word to me before then. He just lunged right into me. * * * I grabbed at the knife and I finally got hold of Ernest's right hand with the knife in it. We scuffled around. * * * I was staying with the knife and he was trying to get loose. * * * He struck me once with the knife,—the tip end of the blade struck me on the arm, and struck me again on the shirt; cut my underwear a little and scratched me. If I had been a little closer it would have cut me wide open. * * * I had a gun in my bosom. * * * I pulled the gun out of my bosom and threw it down on Ernest. * * * The first shot went in the mail box and the second shot hit Ernest Holmes in the side." No other witness save appellant undertook to tell how the difficulty began, or what—from the defendant's standpoint—caused the shooting. We are still of opinion that appellant suffered no injury from the charge of the court on self-defense.

Complaint is again urged that the trial court did not comply with the last command in article 1257c, P. C. (Acts 42nd Legislature, Chapter 60). We copy said article, italicizing that part which appellant claims was ignored:

"In all cases tried under the provisions of this Act it shall be the duty of the Court, where the facts present the issue of murder without malice, to instruct the jury that murder without malice is a voluntary homicide committed without justification or excuse under the immediate influence of a sudden passion arising from an adequate cause, by which it is meant such cause as would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection, *and in appropriate terms in the charge to apply the law to the facts as developed from the evidence.*"

It must be borne in mind that under the general statute (article 658, C. C. P.) the trial judge is required to deliver to

the jury in all felony cases a "written charge, distinctly setting forth the law applicable to the case." To ascertain whether there was a substantial compliance with the latter part of article 1257c, P. C., it is necessary to view the court's instructions as a whole. In paragraph one of the charge the court defined murder generally as a voluntary killing, in the absence of circumstances which would reduce the offense to negligent homicide, or which would excuse or justify the killing. In the second paragraph the jury was advised that murder may be committed either with or without malice aforethought, stating the penalty prescribed in either event. In paragraph four murder without malice in the exact terms of article 1257c was defined, omitting only the italicized part as shown above. In paragraph six the court makes application of the law to a killing committed with malice aforethought substantially as follows: That if the jury believed from the evidence beyond a reasonable doubt that appellant *with malice aforethought* and voluntarily, killed deceased by shooting him with a pistol, they should find him guilty of murder and assess his punishment at death or confinement in the penitentiary for life, or for any term of not less than two years. It would scarcely be contended that such was not a sufficient application of the law of murder with malice aforethought. In paragraph seven the court undertook to make an application of the law of a killing without malice, and told the jury if they believed from the evidence beyond a reasonable doubt that appellant *"without malice, as hereinbefore defined,"* did voluntarily kill deceased by shooting him with a pistol, he should be found guilty of murder without malice and his punishment assessed at confinement in the penitentiary for not less than two nor more than five years.

If the application of the law of murder with malice is sufficient, it is difficult to reach the conclusion that the application of the law of murder without malice is not likewise sufficient. It is to paragraph seven of the charge that appellant directs particular complaint urging that it is not such an application of the law as was suggested in Youngblood v. State, 50 S. W. (2d) 315; Butler v. State, 51 S. W. (2d) 384; Privett v. State, 57 S. W. (2d) 1102; and that to hold the present charge sufficient would be in direct conflict with the announcement in those cases. It will be seen from an examination of the opinions referred to that in none of such cases was this court undertaking to lay down a form of charge which alone would be regarded as complying with the statute. We adhere to the suggestion in said cases that the most desirable method of applying the law of

murder without malice would be in some appropriate language to tell the jury that, if accused committed the killing in a sudden passion, which condition of mind was brought about by a cause or causes which would have produced such state of mind in a person of ordinary temper, his punishment could not be assessed at more than five years in the penitentiary. The real point here involved is: Did the trial court in his application of the law make such principle plain to the jury? The charge complained of referred back to the definition of murder without malice, which included also the definition of adequate cause, and told the jury if the "killing was without malice as hereinbefore defined," the punishment should be not less than two nor more than five years in the penitentiary. While not in the most approved form, we think it should not be held that there was a failure to comply with the statute in question, or that appellant did not have every benefit before the jury of a charge on the issue of a killing in the absence of malice aforethought.

In his motion for rehearing, appellant calls attention to the fact that the charge which was held insufficient in Butler's case (supra) is the same charge employed here. This does not appear from the opinion in Butler's case, but an examination of the record in that case reveals the exact similarity. A further consideration of the question leads us to believe we may have been in error in the case mentioned. As hereinbefore said, we adhere to the suggestion made in the Butler case as to the better practice.

It might not be amiss to call attention to the fact that the court over and over instructed the jury that, if the evidence in this case raised in their minds a reasonable doubt as to whether the killing was upon malice, they could not convict of any offense other than murder without malice, and that, notwithstanding such instruction, the jury found appellant guilty of murder with malice, and fixed his punishment at thirty-five years in the penitentiary.

Being unable to agree with appellant, the motion for rehearing will be overruled.

*Overruled.*