## JOHN B. WILLIS V. THE STATE.

No. 17331.   Delivered March 13, 1935.
Rehearing Denied May 1, 1935.

The opinion states the case.

*Ralph B. Shank, F. G. Swanson,* and *C. C. Morris,* all of Tyler, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for rape; punishment, death.

There are six bills of exception, three presenting objections to the refusal to change the venue, which will be conjointly discussed later, the same question being involved in each.   Bill of exceptions 4 complains of the overruling of appellant's objection to the prosecutrix stating that she did not consent to the act of intercourse which forms the basis of the charge against appellant.   The ground of objection was that such statement was but a conclusion and opinion of the witness.   There is nothing in

the objection. Bill No. 5 shows objection to said witness testifying as to how long appellant was engaged in such sexual act, the objection being for the same reason above stated, and our conclusion in regard to it is also the same. Bill No. 6 was reserved to the overruling of the motion for new trial which recited, as grounds for same, the identical matters covered by the five bills of exception just mentioned.

Appellant moved for a change of venue, making affidavit thereto and supporting same by the affidavits of two compurgators, as is the requirement of article 562, C. C. P.,—the only ground laid being that there existed against him in Smith County, Texas, so great a prejudice as that he could not obtain in said county a fair and impartial trial. In its traverse of said motion the State questioned the means of knowledge of the makers of appellant's supporting affidavit, and denied the existence of the prejudice.

Upon the issue appellant introduced excerpts from newspapers of Smith and Dallas counties, also the testimony of the two compurgators and three other witnesses who lived in or near Tyler. As we understand this record, none of these witnesses claimed knowledge of the attitude or sentiment generally toward this appellant of the people of Smith County, which is shown by testimony to have a population of about fifty-seven thousand people. One of said witnesses merely stated that the circulation in Smith County of the Dallas papers referred to was about five hundred copies daily. Of the other four,—two said they doubted if appellant could get a fair trial in said county, and the other two said they did not believe he could get such character of trial, though what they had heard seems to have been directed at any man who would commit a crime such as that imputed to appellant and not personally to this appellant.

For the State some thirteen witnesses from different parts of Smith County, of different avocations and evincing knowledge of the sentiment of the people of their various communities,—testified that in their judgment appellant could obtain in said county a fair and impartial trial. There is no evidence in this record that appellant made any effort to get other parties to testify in his behalf but without success. The articles from the papers referred to,—all of which appear in this record,— have been reviewed by us, as they doubtless were by the learned trial judge, and, with one or two not very extravagant exceptions, seem to present statements reasonably in consonance with the facts of the case as developed on this trial, and same were

not so colored as to reasonably create feeling or resentment more than would arise in the breast of any citizen hearing such facts narrated.

That newspapers have a right to publish news is beyond question, and citizens who have merely read reasonably accurate descriptions of crimes in newspapers are not ipso facto to be barred from jury service upon juries before whom are tried cases involving such facts. The controlling issue in the selection of jurrors who may have heard or read what purports to be the facts of any given case, is the resultant effect upon the mind of the proposed juror. Not all men have beliefs or form definite or fixed conclusions as to cases, men or issues merely from newspaper reading; and the ascertainment of the attitude of veniremen called to try a case is first by finding from them, when brought before the court, what they have read or heard, and what they think to be their ability to fairly try the issues uninfluenced by what may have crossed their path. What they say, in connection with other facts brought to the attention of the court, will first be passed upon by the trial judge, whose judgment will be subject to review upon appeal, and will be upheld unless, in the opinion of the appellate court, same is so manifestly incorrect as to reflect an abuse of discretion to the probable injury of the accused.

Appellant renewed his motion for change of venue after the jurors had been selected, bringing forward by a complete transcription all that came before the court in the selection of said jurors as additional grounds for the granting of his prayer. The venire drawn called for two hundred men. The jury was selected from the first one hundred men summoned, and no one of them was taken over objection or challenge by the accused. Twenty of the said one hundred men were sick or absent; one was a brother of a witness; the name of another was not correctly on the list; thirteen had conscientious scruples as to the infliction of the penalty of death as punishment for crime; fifteen were challenged by appellant; ten by the State, and twenty-three had formed opinions more or less fixed which they were afraid would influence them, or were by the court deemed sufficient to be held grounds of challenge for cause.

Nothing is better settled than that in determining whether the trial court abused his discretion in refusing to change venue, each case must be decided upon its own facts. No two cases are alike. Many holdings of this court are reviewed and cited in the able briefs of both counsel for appellant, who are to be highly commended for their earnest effort in a cause wherein

they were appointed by the court, and served without pay as faithful officers of the court. We do not find any case enough like this on its facts to justify holding it a precedent. Many of those cited are upon facts and issues wholly different, such as Ross v. State, 93 Texas Crim. Rep., 531; Cox v. State, 90 Texas Crim. Rep., 106, etc., where there was no traverse of the application. Others have some points in common such as Richardson v. State, 70 S. W. (2d) 1003; Blackshear v. State, 72 S. W. (2d) 601; Boyd v. State, 111 Texas Crim. Rep., 405; Parker v. State, 111 Texas Crim. Rep., 140, but in none of these was there as small a group affirming a prevailing prejudice, as here appears, nor as large a group in proportion affirming a lack of prejudice or feeling. There is here no testimony showing public excitement or feeling. The removal of appellant from one jail to another,—as testified without contradiction,—was not because of any threats or efforts to arouse mob action. When arrested appellant was in Palestine, and was there put in jail. He was later carried to Tyler for purposes of identification, and then by the very cautious sheriff he was taken to another city. The newspaper articles in the record were informative as far as the facts went, but in none of them were there any lurid appeals or apparent effort or intent to stir up the public mind. Of the eighty jurors examined before the court upon the trial, many had only heard of the case and had formed no opinion. Others had heard of it, but had formed no opinion such as would influence them. We can not lay down the rule that because men read the newspapers and thus make contact with what therein appears, they must be held disqualified to serve as jurors. There was no defense attempted in this case. Appellant did not take the stand.

A young man of eighteen, and his wife of the same age, married but a short time, were in a park at night in their car in the city of Tyler. A man with a flash light and pistol entered the car and commanded them to drive where he directed. The young man drove by direction many miles out. Both were then ordered by the man to alight from the car. The young husband was stripped of most of his clothing and made to lie down upon the ground, and his hands were wired up above his head to a tree and his feet wired to another. The young woman was then forced to go with appellant several hundred yards where she was compelled to divest herself, or was by appellant divested,— of every particle of her clothing. She was then ravished and wired to two trees in like manner as her husband. Appellant then got in their car and drove away. The young woman worked

herself loose and aided her husband to get loose, and they reported the matter, and in a little over an hour appellant was arrested in Palestine, Texas, in possession of the car. He was positively identified by both the young man and his wife as their assailant.

We try to go fully into every case before us, but when the death penalty is given we carefully examine and consider the most trivial point, if there be such, realizing our responsibility and the fearful consequences of even a slight mistake on our part. We have so considered this case. We believe there is nothing in the record demanding reversal, and the judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—In his motion for rehearing appellant insists that we were in error in not sustaining his complaint because the court declined to change the venue. The substance of the evidence upon the issue is very fully set out in our original opinion showing the evidence was in conflict on the question of whether appellant could secure a fair trial in the county; the evidence upon the point preponderating in favor of the State. The principles by which the trial court is to be governed in determining such question is stated in Carlile v. State, 96 Texas Crim. Rep., 37, 255 S. W., 990, as follows:

"The statute fixes the measure of the court's duty upon an application for a change of venue, namely, to grant the motion where, upon the uncontroverted motion or upon the evidence adduced, it is made to appear that there exists in the county 'so great a prejudice against (the appellant) that he cannot obtain a fair and impartial trial.' Code of Crim. Proc., art. 628. The burden is upon the appellant to prove the existence of such prejudice, and, where evidence is heard, the issue is to be deteremined by the trial court. The discretion is upon the trial court to weigh the evidence, and, if from it there arises two conflicting theories, the trial court has the discretion to adopt either. In the absence of the abuse of this discretion, the judgment will not be disturbed on appeal. If, however, the evidence is such that it leads to the conclusion that the bias, prejudice, or prejudgment of appellant or his case is such as renders it improbable that a fair and impartial trial can be given him, the trial court is without discretion to refuse the application. Dobbs v. State, 51 Texas Crim. Rep., 632, 103 S. W., 918. Injury is shown when it is made evident that under the procedure pro-

vided by law it is improbable that an impartial jury can be impaneled to determine the guilt of the accused, and a change of venue is denied. Barnes v. State (Tex. Crim. App.), 59 S. W., 883; Randle v. State, 34 Texas Crim. Rep., 59, 28 S. W., 953; Cox v. State, 90 Texas Crim. Rep., 106, 234 S. W., 72, and cases cited."

Later cases approving the announcement in Carlile's case are Walker v. State, 98 Texas Crim. Rep., 663, 267 S. W., 988; McNeeley v. State, 104 Texas Crim. Rep., 263, 283 S. W., 522; Walker v. State, 60 S. W. (2d) 455. From a review of all the evidence relating to the request for change of venue we find nothing which leads to the conclusion that the learned trial judge abused the discretion vested in him to determine the matter.

The motion for rehearing is overruled.

*Overruled.*