# L. B. (BUD) PUGH V. THE STATE.

No. 23054. Delivered February 21, 1945.
Rehearing Denied April 4, 1945.

The opinion states the case.

*Truett Smith* and *Tom Garrard,* both of Tahoka, for appellant.

*Rollin McCord,* District Attorney, of Tahoka, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of the unlawful killing of Mr. Con Burns, a deputy sheriff, and was by the jury given a sentence of twenty-five years in the State prison.

Appellant moved in limine for a change of venue, alleging that there was so great a prejudice against him in Lynn County that he could not therein obtain a fair and impartial trial. His motion was controverted by the State, and the issue joined before the court. Appellant offered fourteen witnesses, practically all of whom testified that it was their opinion that a fair trial could not be had in Lynn County because of the prejudice against the appellant. That there had been details of this killing published in the Lynn County News and the Lubbock Avalanche which were unfavorable to appellant. That these two papers were widely read in Lynn County, and they had heard discussions where the opinion was expressed that appellant should be executed or sent to the penitentiary for life. They thought such opinions were county wide. The State countered with nine witnesses, some of whom were county officers with a wide acquaintance throughout the county, who thought that a fair and impartial trial could be had in Lynn County. While there had been some talk about the killing immediately after it had happened, such talk seemed to have died down, and they thought a fair trial could be had in the county. Witnesses for the State included a cotton weigher for twelve years; a resident of the community for eighteen years; a hardware merchant for twenty years, at Tahoka, the county seat; a farmer from the Dixie community; Pat Swann, county commissioner; Leon Jennings, another county commissioner; Lonnie Williams, another county commissioner, as well as John Evans, a resident of Lynn County for twenty-four years, all of whom expressed the opinion that appellant could obtain a fair and impartial trial in that county. At the completion of this testimony the trial court said: "I don't feel that there has been a sufficient showing to warrant the changing of this case to another county, and your application for a change of venue is denied."

Unless there appears a clear abuse of discretion upon the part of the trial court it is our duty to uphold his above ruling. See McCrary v. State, 97 S. W. (2d) 236. From McNeely v. State, 283 S. W. 522, we quote:

"The duty is upon the trial court to weigh the evidence, and if therefrom there arise conflicting theories, one tending to show prejudice of the nature mentioned and the other the contrary, the discretion as to the court is to adopt either. In the absence of abuse of this discretion, the judgment is not to be disturbed

upon the appeal. If, however, the evidence is such that it leads to the conclusion that bias, prejudice, or prejudgment of appellant or his case is such as to render it improbable that a fair and impartial trial can be given him, the trial court is without discretion to refuse the application. See Carlile v. State, 96 Tex. Cr. R. 37, 255 S. W. 991, and authorities therein collated."

Also see Sanchez v. State, 181 S.W. (2d) 87, in which we said:

"It is the rule in this State that if conflicting theories as to prejudice arise from the evidence, the trial court has the discretion of adopting either theory, it being his duty to weigh the evidence. A judgment denying the application will not be disturbed unless it be made to appear that the trial court abused his discretion with respect thereto. See Davis v. State, 120 Tex. Cr. R. 114, 28 S. W.2d.794; Willis v. State, 128 Tex. Cr. R. 504, 81 S. W. (2d) 693; Garza v. State, 135 Tex. Cr. R. 138, 117 S. W. 2d 429," and we add Handy v. State, 138 S.W.(2d) 541, in which latter case the doctrine is again affirmed that the burden of showing such prejudice or prejudgment is upon appellant.

A review of the proceedings relative to the voir dire examination of prospective jurors shows that nine veniremen evidenced conscientious scruples relative to the death penalty and were excused by the court; sixteen veniremen testified that they had formed an opinion in the case that would require testimony to remove and were excused by the court; the State peremptorily challenged four veniremen, and the appellant peremptorily challenged fifteen, and the twelfth juror taken seemed to have been satisfactory to both sides. There were fifty-six jurors examined out of an originally ordered one hundred men, and upon an examination of the fifty-sixth juror the jury was completed. We are of the opinion that the early selection of a jury free from an expressed opinion relative to this case would go far towards showing that the trial court did not abuse its discretion in holding that it was not shown that appellant's case had been prejudged by the citizens of Lynn County to such an extent that a fair and impartial trial could not be had therein.

There are sixteen bills of exceptions in the record, the first bill relating to the trial court's refusal to change the venue in this case. What we have said above we think disposes of bill No. 1, which we overrule.

Bill No. 2 complains of the State's witness Lloyd Nowell being allowed to testify relative to a conversation with the de-

ceased just prior to the shooting in which the witness finally stated that "he (Mr. Burns) appeared to be friendly." This eye-witness to the killing had talked with appellant and also with the deceased just prior to the fatal difficulty, and gave an account of the actions and appearance of both at the actual time of the shooting, and such a statement upon the part of the witness was but a shorthand rendition of the facts and the res gestae of the killing, and was properly admitted. See Branch's Criminal Law, p. 203, Sec. 347.

Bill No. 3 relates to the testimony of Lloyd Nowell, who was asked the following question: "How long from the time the shooting started could you see Mr. Burns as he fell and did Mr. Burns live?" to which question and answer thereto appellant objected because the same would have been an opinion and conclusion of the witness. The court permitted the answer: "I think Mr. Burns was dead when he hit the ground." It was shown that the witness was within a short distance of this killing and looking at the parties at the time, and we see no valid reason why the impression made upon his mind at the time, in the presence of appellant, should not have been given.

Again in bill No. 4 it was shown that one Shorty Wilson, who was also present at the scene of the shooting, and when he saw appellant get out of his car with a gun in his hand, Nowell was asked: "What did Shorty Wilson do at that time, did he say anything?" to which the witness Nowell replied: "Shorty Wilson said: 'My God, look out' and took off toward the bank." This was objected to as hearsay and out of the presence of the defendant. We think such exclamation was a part of the res gestae. It seems to have been "instinctive and made under the active influence of the transaction." See 18 Tex. Jur. p. 298; Johnson v. State, 110 Tex. Cr. R. 253, 8 S. W. (2d) 127. If we give such statement a construction injurious towards appellant, it could only mean that a shooting was about to take place, which is not denied by anyone, and which is clearly proven. The remark itself evidences naught that would be any more injurious to appellant than the admitted facts, and those are that appellant did have a pistol in his hand, and some one shot Mr. Burns at such time, and a bystander possessed of an ordinary amount of caution had better look out. See Wade v. State, 98 Tex. Cr. R. 27, 263 S. W. 589. The bill evidences no error.

Bill of exceptions No. 5 relates to the witness Nowell testifying that the deceased, having his pistol in his hand, "never got the trigger back." Evidently the testimony intended to be

elicited from the witness relates to deceased never getting the hammer,—rather than the trigger,—back. In any event the witness was close to the scene of the killing, and observed both parties, and should have been allowed to give his version of what he saw. If he observed that deceased never was able to cock his pistol, it was but the version of an eye-witness, and was proper testimony of the transaction itself.

Bill No. 6 relates to testimony by a witness that a short time prior to this tragedy appellant "* * * was drinking, I wouldn't call him drunk, he was drinking; he said he had been drinking; it seemed to me that he was in the mood for having a big time or something." We think this testimony to have been admissible, especially in view of the only objection being that such had already been gone over, and was not in response to anything brought out on cross-examination.

Bill No. 7 relates to the testimony of the sheriff of Floyd County relative to certain shells fired out of the deceased's pistol having a deeper indenture on the caps thereof than three certain unfired shells found in deceased's pistol after his death. We think the witness could explain whatever he found on such shells, not only to obviate a minute examination thereof by the jury, but also to aid the statement of facts in helping this appellate court to understand the difference in the indent made on such shells.

All the remaining bills relate to the trial court overruling appellant's challenges for cause of certain jurors, bill No. 8 being relative to venireman Roy Nettles. This bill shows that Mr. Nettles had formed some opinion from reading the newspapers, and that if the evidence showed up like he read in the papers he would have that opinion still, "otherwise if there was other evidence it might do away with my opinion all together, I don't feel like I have any established opinion in my mind but naturally do have some kind of opinion as to the guilt or innocence of the defendant." Appellant's bill then continues and shows that he was forced to challenge this venireman, and that he finally exhausted all of his challenges and was forced "to take objectionable jurors, two of whom had opinions in the case, and three others had heard facts and read accounts in papers." It is shown by the trial court's qualification that the juror further testified: "On my oath as a juror I do not think that any opinion that I have formed would affect me in any manner in the trial of the case, because if I am sworn in as a juror I have to take the evidence as presented in court and under the direc-

tion of the court, and I don't think what I read in the paper would have any effect on me."

The trial court qualifies this bill by showing that one of these so-called objectionable jurors was M. L. Kenley, the eighth juror accepted, whom had formed an opinion from reading a newspaper, but such opinion was not fixed as to defendant's guilt or innocence, and he had an open mind and would decide the case on the evidence and the law as brought out in the trial. One of the other objectionable jurors was Oscar Roberts, who was accepted by appellant without any objection or challenge. One of the three jurors who had read or heard about the facts in the case was Archie Reese, who testified that what he had heard and read did not cause him to form an opinion in the case. No objection to him was made by appellant who had used but nine peremptory challenges at such time. Another of the three who had read of the case was juror Hagood, who testified that from what he had heard and read he had formed no opinion in the case. The third objectionable juror was Leon Fails, the seventh juror taken, who testified that from what he had heard and read he had formed no opinion thereon; he was neither objected to nor challenged by appellant, who had six peremptory challenges not used at such time. The qualification also shows that the twelfth juror Jess Joplin was accepted by both State and defendant without objection or challenge.

Each one of the complained of jurors claimed that any opinion they had was based upon newspaper accounts, or mere hearsay, and that they felt able to lay such aside and render an impartial verdict upon the law and the evidence, thus bringing themselves under Section 13 of Art. 616, C. C. P. The admission of such jurors as competent to serve then became a matter in the trial court's discretion, subject to review, however, for an abuse thereof, and under the record it seems that the careful trial court was satisfied of the impartiality of such jurors, and their verdict has some influence evidencing their fairness. It is worthy of note also that juror Joplin, who was the last one taken, was objectionable to neither the State nor the appellant, and therefore after he had exercised all of his peremptory challenges appellant was not forced to take an objectionable juror. We see no injury to him in the selection of the jury.

Bill No. 9 relating to the trial court's overruling of a challenge to venireman E. W. Turnipseed, as qualified by the court, evidences no error.

Bills Nos. 10, 11 and 12 as qualified by the court show no error.

Bill No. 13, to which the trial court's qualification was accepted, shows therefrom that no objection or challenge to M. L. Kenley as a juror was made, who was the subject of the bill, and is therefore overruled.

Bill No. 14 relates to the venireman W. L. Rowe, who was peremptorily challenged by appellant. The venireman testified, as shown by the qualification to such bill, that he had no fixed opinion in his mind and knew nothing that would keep him from being a fair and impartial juror; he knew nothing about the matter except newspaper reading and could lay that aside and take the law and the facts and be governed thereby. We do not think he was subject to challenge for cause.

Bill No. 15 shows no error as same is qualified by the court.

In bill No. 16 Herbert Young was challenged for cause, and the overruling of this challenge is assigned as error. This witness' statement is about the same as the other veniremen above complained of, and we quote from the last portion of his examination:

"I would consider only the evidence adduced on the witness stand in arriving at my verdict, I could lay aside anything I might have heard or read and be fair and impartial alike to the State and defendant. I know nothing that would prevent me from being a fair juror. There is nothing in my mind at this time from hearsay or otherwise as to the guilt or innocence of the defendant that might affect my verdict. Nothing that I have heard or read would in any way influence my verdict for or against the defendant. I feel that I could try this case as though I had not heard of it before."

We think the record evidences no error shown in the trial hereof, and the judgment is therefore affirmed.

## ON MOTION FOR REHEARING.

KRUEGER, Judge.

In his motion for a rehearing appellant claims that in the original disposition of this case we erred in four respects: (1) In sustaining the action of the trial court in declining to sustain

his motion for a change of venue; (2) in holding that certain evidence complained of was res gestae of the transaction and a shorthand rendition of the facts; (3) in sustaining the action of the trial court in permitting Lloyd Nowell to testify that the deceased never got the hammer of the pistol back while he was being shot by appellant; and (4) in not sustaining his objection to the court's charge on the ground that he had failed to apply the law of murder without malice to the facts.

We have again reviewed the record relative to the first three complaints in his motion but see no good reason for receding from the conclusion expressed in the original opinion.

The motion for a change of venue was hotly contested, and there was evidence pro and con which raised an issue of fact. This issue the court decided adversely to him, and unless it is made to appear from the record that the trial court abused his discretion with respect thereto, we would not be authorized to set aside his judgment.

The first and third complaints are clearly without merit.

The fourth complaint relates to the court's charge on the law of murder without malice. Appellant contends that he, in due time, objected to the court's charge because it failed to apply the law of murder without malice to the facts as required by Art. 1257c, P. C. The court did incorporate in his charge the provisions of said article.

We find also that the court, in his charge, defined murder and instructed the jury relative to the law of murder with and without malice. He defined murder without malice, and then instructed the jury as follows:

"3. You are further instructed that even though you do find and believe from the evidence beyond a reasonable doubt, that the defendant, under the instructions given you in this charge, and under the facts in evidence, was guilty of murder, but should have a reasonable doubt as to whether the defendant, in committing the offense, if he did, was prompted by 'malice aforethought,' then you should resolve such doubt in favor of the defendant, and the punishment assessed by you, if any, could not be for a longer period than five years in the penitentiary."

"5. You are further charged that though you should find the defendant guilty of murder, beyond a reasonable doubt, yet, if you believe, or have a reasonable doubt thereof, from all the

facts and circumstances in evidence, both those occurring at or about the time of the homicide, or prior thereto, that the mind of the accused was in such condition of sudden passion arising from an adequate cause as to render it incapable of cool reflection, and that such cause or causes, if any, was such as would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection, and that, while in such condition the defendant committed the offense charged, then you cannot assess a penalty of more than five years in the penitentiary."

"6. You are charged that if you believe from the evidence beyond a reasonable doubt that the defendant, L. B. (Bud) Pugh, on or about the 8th day of June, 1944, in the County of Lynn and State of Texas, without malice, as hereinbefore defined, did unlawfully and voluntarily, and not in his own self-defense, as the same will be hereinafter defined to you, kill the said Con Burns by then and there shooting him with a gun, you will find the defendant guilty of murder without malice and assess his punishment at confinement in the penitentiary for not less than two nor more than five years, but, unless you do so find beyond a reasonable doubt, you will acquit the defendant."

It occurs to us that the court's charge is not subject to the objection urged thereto. The court was not required to pick out particular facts and circumstances and tell the jury that they constituted adequate cause, because whether or not certain facts constitute adequate cause is, under the present law, a question of fact for the decision of the jury and not the court. In support of what we have said here, we refer to the following authorities: Smith v. State, 124 Tex. Cr. R. 389, 61 S. W. (2d) 835; Gamez v. State, 133 Tex. Cr. R. 481, 112 S. W. (2d) 196; Stapp v. State, 140 Tex. Cr. R. 669, 147 S. W. (2d) 256. See also Weems v. State, 185 S. W. (2d) 431, where the question here raised is fully discussed.

Believing that the case was properly disposed of on the original submission, the motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.